LIBBY *v.* HOPKINS.

1. "Mutual debts" and "mutual credits," where they occur in sect. 20 of the act of March 2, 1867, c. 176 (14 Stat. 517), and sect. 5013 of the Revised Statutes, are correlative. Credits do not include a trust, and in case of bankruptcy only such credits as must in their nature terminate merely in debts are the subject-matter of set-off.
2. A. being indebted to B. by note secured by mortgage, and on an account, sent him money with instructions to credit it on the note. A. was shortly thereafter adjudged to be a bankrupt. *Held,* that the money was received by B. in trust to apply it pursuant to instructions, and, having refused to conform to them, he cannot set off against it the account, but is liable therefor to A.'s assignee in bankruptcy.

ERROR to the Supreme Court of the State of Ohio.

The suit was brought in the Superior Court of Cincinnati by A. T. Stewart & Co., of which firm the plaintiffs in error are the survivors, against Lewis C. Hopkins and wife, and Isaac M. Jordan, trustee in bankruptcy of Hopkins.

It appears from the record that A. T. Stewart & Co., merchants, of the city of New York, loaned, June 6, 1866, Hopkins, a merchant of Cincinnati, Ohio, $100,000, and took his promissory note of that date therefor, payable on demand with interest from date, to secure the payment of which he executed and delivered to them several mortgages on real estate in Cincinnati and its vicinity. Both before and after that date he bought of them large quantities of goods; and as a matter of convenience kept with them two accounts, — one a cash and the other a merchandise account. They were his bankers. All his remittances were sent to them and credited to him in the cash account. By drafts thereon he paid his debts for merchandise to them and other New York merchants, and in order to replenish it he borrowed the $100,000 above

mentioned, and it was carried to his credit in that account. On May 4, 1867, he paid on his note $25,000. On Nov. 12, 1867, he remitted to Stewart & Co. $10,000, on Dec. 27, 1867, $17,000, on the 28th of the same month, $10,000, and on the 30th, $48,025. He directed these remittances to be applied to the payment of his note, and to be credited thereon. It is now no longer disputed that the first three of these remittances were so applied. The last two, with the interest thereon, constitute the sum now in controversy.

On Jan. 1, 1868, Hopkins suspended business, insolvent. At that time he owed A. T. Stewart & Co. $231,515 on account, and unsecured. His liabilities to others amounted to more than $500,000. A petition in bankruptcy was filed against him February 29. He was adjudicated a bankrupt March 30. On April 30 Jordan was appointed trustee.

As to the foregoing facts there is no dispute.

In August, 1868, on what day the record does not show, Stewart & Co. commenced this suit for the foreclosure of the mortgages, claiming as due the full amount of the note, less the payment of $25,000.

The answer, besides other defences not pertinent to any contention now raised, averred that Hopkins had paid on the note, not only the said sum of $25,000, but also the remittances above mentioned, making the total amount paid thereon $110,025 ; and, after alleging that said payments were made in fraud of the Bankrupt Act, demanded, by way of counterclaim, a judgment against Stewart & Co. therefor.

The reply admitted that Hopkins requested Stewart & Co. to credit the remittances on his mortgage debt, and averred that they were held subject to his order, and continued to be so held, up to the time when the rights of Jordan, trustee, attached; subject to such law of set-off as is provided in the Bankrupt Act. It nowhere appeared in the pleadings that Hopkins was indebted to the plaintiffs on any unsecured claim, or in any other way, except upon the note for $100,000. No unsecured debt of Hopkins was pleaded as a set-off or otherwise.

The Superior Court found that the mortgages were valid, and the first lien on the premises therein described, and that

there was due thereon, including interest, the sum of $75,-957.06. It rendered a final decree that unless that sum with interest be paid within one hundred and eighty days therefrom to Stewart & Co., the mortgaged premises should be sold.

The court further found that when Hopkins made the last two remittances, of $10,000 and $48,025, respectively, it was with the intent and the express instruction in writing to Stewart & Co. to apply them in discharging the mortgage claim; that Stewart & Co. refused to do so, but assumed, without his authority or consent, to apply and did apply them to his credit on the general account against him for merchandise; that Stewart & Co. had no right to make such application; and that the remittances remained in their hands as his moneys from the several days of their payment until Feb. 29, 1868, when the title of Jordan as trustee attached thereto. It also found that the said two several sums were not subject to any claim of set-off or cross-demand, or of mutual debts or credits, on the part of Stewart & Co., under sect. 20 of the Bankrupt Act, or otherwise.

The court, therefore, rendered a decree in favor of Jordan, trustee, against Stewart & Co. for $58,025, the aggregate of the last two remittances, with interest, amounting in all to $75,981.36.

The case was carried, by the petition in error of Stewart & Co., and the cross-petition in error of Jordan, trustee, to the Supreme Court of Ohio, by which the decree of the Superior Court was affirmed.

Stewart & Co. thereupon brought the case here by writ of error. Some of the members of the firm have died, and Libby and another are its surviving members.

*Mr. Aaron F. Perry* for the plaintiffs in error.

*Mr. Jackson A. Jordan* and *Mr. Isaac Dayton, contra.*

MR. JUSTICE WOODS, after stating the facts, delivered the opinion of the court.

The only question to which our attention is directed by the plaintiffs is that of set-off under the twentieth section of the act of March 2, 1867, c. 176 (14 Stat. 517), which is as follows: "In all cases of mutual debts or mutual credits

between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid, but no set-off shall be allowed of a claim in its nature not provable against the estate: *Provided*, that no set-off shall be allowed in favor of any debtor to the bankrupt of a claim purchased by or transferred to him after the filing of the petition." This provision was in force at the time of the trial, and is now substantially incorporated in sect. 5073 of the Revised Statutes.

The contention of the plaintiffs is that they were entitled under this section to set off an unsecured account due them from Hopkins against the $58,025 remitted to them by him with directions to credit it on his mortgage debt, and which they refused so to apply.

Waiving the difficulty that they have not pleaded that account as a set-off, we shall consider the question made by them. That account is a claim provable against the bankrupt estate, and it was not purchased by or transferred to them after the filing of the petition in bankruptcy. The controversy is, therefore, reduced to this issue: Were that account and the money transmitted by Hopkins to them, and held and not applied by them to the mortgage debt, mutual credits, or mutual debts which could be set off against each other under the twentieth section of the Bankrupt Act?

The plaintiffs insist that the term "mutual credits" is more comprehensive than the term "mutual debts" in the statutes relating to set-off; that credit is synonymous with trust, and the trust or credit need not be money on both sides; that where there is a deposit of property on one side without authority to turn it into money, no debt can arise out of it; but where there are directions to turn it into money it may become a debt, the reason being that when turned into money it becomes like any other mutual debt. They say that the first of the two remittances under consideration is not proved to have been other than money, but as it was only $10,000 its application to the note could not be required. The larger remittance was in drafts, and their application could not be required. But there was authority to turn them into money, and that to get the money on them it was necessary that the

drafts should be indorsed by the plaintiffs, and that the indorsement to and collection by them put the money received in the same plight as if the drafts had been sent to them for collection. We cannot assent to these views, and they receive but little support from the adjudged cases.

*Ex parte Deeze* (1 Atk. 228) arose under the twenty-eighth section of the statute 5 Geo. II. c. 30, which provides that " when it shall appear to the said commissioners [in bankruptcy] or the major part of them, that there hath been mutual credit given by the bankrupt and any other person, or mutual debts between the bankrupt and any other person, at any time before such person became bankrupt, the said commissioners, or the major part of them, or the assignees of such bankrupt's estate, shall state the account between them, and one debt shall be set against another, and what shall appear to be due on either side on the balance of said account, and on setting such debts against one another, and no more shall be claimed on either side respectively." In that case, a packer claimed to retain goods not only for the price of packing them, but for a sum of £500 lent to the bankrupt on his note. Lord Hardwicke determined that he had such right on the ground of mutual credits, holding that the words " mutual credits " have a larger effect than " mutual debts," and that under them many cross-claims might be allowed in cases of bankruptcy, which in common cases would be rejected.

But this ruling was subsequently made narrower by Lord Hardwicke himself, in *Ex parte Ockenden* (id. 235), and was in effect overruled in *Rose* v. *Hart*, 8 Taunt. 499. In that case trover was brought for cloths deposited by the bankrupt previously to his bankruptcy, with the defendant, a fuller, for the purpose of being dressed. It was held that the defendant was not entitled to detain them for his general balance for such work done by him for the bankrupt previously to his bankruptcy, for there was no mutual credit within that section. And the court declared that the term " mutual credits " in the act meant only such as must in their nature terminate in debts.

The rule established in this case, as to the nature of the credits which can be the subject of set-off, has been declared in

other cases. *Smith* v. *Hodson*, 4 T. R. 211; *Easum* v. *Cato*, 5 Barn. & Ald. 861. The effect of the authorities is, that the term "mutual credits" includes only such, where a debt may have been within the contemplation of the parties.

These authorities make it clear that, even under the Bankrupt Act of 5 Geo. II., the plaintiffs would have no right to the set-off claimed by them. And they lose sight of the controlling fact that the money and the drafts which they turned into money were remitted, with express directions to apply them on a specific debt. Without the consent of Hopkins they could never be changed into a debt due to him from the plaintiffs, and that consent has never been given.

Whether or not he had the right to direct the application, is immaterial. There was no legal obstacle to the application as directed. The fact that he gave the direction imposed on the plaintiffs the obligation to apply the money as directed, or to return it to him.

They had no better right to refuse to make the application and to retain the money and set off against it the debt due to them from Hopkins, than if they had been directed to pay the money on a debt due from him to another of his creditors, or than they had to apply to the payment of his debt to them money which he left with them as a special deposit.

Hopkins sent them the money and drafts, upon the faith and trust that they would be applied according to his instructions. The refusal so to apply them did not change the relations of the parties to this fund, nor make that a debt which before such refusal was a trust. To so hold would be to permit a trustee to better his condition by a refusal to execute a trust which he had assumed. *Winslow* v. *Bliss* (3 Lans. (N. Y.) 220) and *Scammon* v. *Kimball* (92 U. S. 362), cited by the plaintiffs to support their contention, are cases where a bank or banker was allowed to set off the money of a depositor against a debt due from him to the bank. The answer to these authorities is that the relation between a bank and its general depositor is that of debtor and creditor. When he deposits moneys with the bank, it becomes his debtor to the amount of them. *Foley* v. *Hill*, 2 H. L. Cas. 28; *Bank of the Republic* v. *Millard*, 10 Wall. 152; *Bullard* v. *Randall*, 1 Gray (Mass.),

605. When, therefore, he becomes indebted to the bank, it is a case of mutual debt and mutual credit, which may well be set off against each other.

But in this case there was no deposit. The relation of banker and depositor did not arise, consequently there was no debt. When A. sends money to B., with directions to apply it to a debt due from him to B., it cannot be construed as a deposit, even though B. may be a banker. The reason is plain. The consent of A. that it shall be considered a deposit, and not a payment, is necessary and is wanting.

Another answer to the contention of the plaintiffs is found in the language of the twentieth section of the Bankrupt Act of March 2, 1867, c. 176, which differs materially from that of the twenty-eighth section of 5 Geo. II. c. 30. In our act the terms "credits" and "debts" are used as correlative. What is a debt on one side is a credit on the other, so that the term "credits" can have no broader meaning than the term "debts." We find no warrant in the language of the section or its context for extending the term "credits" so as to include trusts. Generally we know that "credit" and "trust" are not synonymous terms. They have distinct and well-settled meanings, and we see no reason why they should be confounded in interpreting the twentieth section of the Bankrupt Act.

To authorize a set-off there must be mutual credits or mutual debts. The remitting of certain money assets by Hopkins to the plaintiffs, to be applied by them according to his instructions, did not make them his debtors, but his trustees. So that there were in the case no mutual credits or debts. The indebtedness was all on the side of Hopkins. The plaintiffs owed him nothing. They held his money in trust to apply it as directed by him.

They refused to make the application as he directed. They held it, therefore, subject to his order. They continued so to hold it until the rights of the trustee in bankruptcy attached, and until he sought to recover it by his counter-claim filed in this case.

The only contention of the plaintiffs set up in this court is that the Supreme Court of Ohio approved of the action of the Superior Court of Cincinnati, in refusing to allow the plaintiffs

to set off the unsecured debt due to them by Hopkins against funds intrusted to them by him for an entirely different purpose. We are of opinion that the decision of the Superior Court was correct. The judgment of the Supreme Court of Ohio must, therefore, be

*Affirmed.*