MINARD et al. v. WATTS.

(Circuit Court, D. Kansas, Third Division. January 29, 1910.)

No. 588, Equity.

BANKS AND BANKING (§ 80*)—INSOLVENCY—GENERAL OR SPECIAL DEPOSIT—TRUST FUND.

Complainants being in litigation concerning the title to certain lands in the possession of a tenant, it was agreed that the landlord's share of the rentals accruing pendente lite should be deposited in a bank to abide the final determination of the controversy, pursuant to which agreement various sums were so deposited, there being at no time any agreement or understanding between any of the parties and the bank that the deposits were to be held or kept separate from the general funds of the bank. *Held*, that such deposit was general in its nature, and did not constitute a trust fund, so that, on the failure of the bank, complainants were only entitled to share in the bank's assets as general creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184–196; Dec. Dig. § 80.*]

In Equity. Bill by Henry Minard and the Garrett Biblical Institute against John Watts, as receiver of the First National Bank of Ft. Scott, Kan. Bill dismissed.

W. P. Dillard and W. W. Padgett, for complainants.
F. F. Oldham and Keene & Gates, for defendant.

POLLOCK, District Judge. By the bill filed and presented in this case, complainants seek to recover from defendant the sum of $450, on the theory this sum constitutes a trust fund in the possession of the defendant as receiver of the First National Bank of Ft. Scott, this state (hereinafter called the "Bank"), to which complainants, in equity, have a right superior to the general creditors of the Bank. The case has been submitted for final decree on agreed facts and briefs of solicitors for the respective parties. The facts are:

Complainants, being involved in litigation pending in the courts of the state between themselves, arising over the question of title and ownership of a quarter section of land, the possession of which was held by one Fowler as tenant, agreed the money representing the landlord's share of the rentals arising from the land during the pendency of the litigation should be deposited in the Bank, to abide the final decision of the controversy over the title to the land, then received by the successful party. In pursuance of this agreement, on February 12, 1907, Fowler deposited with the Bank the sum of $180; September 9, 1907, the sum of $90; December 31, 1907, the sum of $90; and September 30, 1908, the sum of $90. These sums so deposited make up the fund in dispute in this controversy.

[1] The question presented for decision is: Have complainants such a superior right to the funds in dispute as in equity will enable them to follow and recover the entire amount so deposited from defendant, receiver of the estate of the insolvent Bank, in liquidation in his hands, or will they be required to prorate with the general creditors of the Bank?

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This question must depend for its decision on the legal relation of complainants to the Bank. From the facts it is clear Fowler, the tenant, was by agreement of complainants constituted their joint agent to deposit the landlord's share of rental money arising from the land in controversy in the Bank, to be by it retained until it should be determined which of complainants should succeed in the litigation arising over the land from which the funds deposited arose, and then pay over the amount of the deposits made to the successful party.

While out of the great variety of transactions that may be had between a banking institution and those dealing with it there may arise many different relations, depending for their legal effect on the precise facts which characterize the particular transaction, yet in this case the facts leave no room for doubt, and the parties have stipulated the transaction between complainants and the Bank was one of deposit, in the following language:

"It is agreed by the parties hereto that there was not, at any time, any expressed agreement or understanding between Henry Minard, or the Garrett Biblical Institute, or either of them, on the one part, and the First National Bank of Ft. Scott, Kan., on the other part, that the deposits, or any of them, referred to in the bill of complaint in this case, were to be held or kept separate and distinct from the general funds of the Bank."

Therefore, the transaction here involved being one of deposit, the legal status of the parties thus created must be either that of bailor and bailee, or of creditor and debtor; for no other legal relation can arise out of the act of one depositing money with a bank.

The question, therefore, is: Was the deposit in this case general or special? If general, complainants parted with their title to the funds deposited, the relation of debtor and creditor was by the act of deposit created between complainants and the Bank, and the obligation undertaken by the Bank was to pay over the amount of the deposit to the successful complainant in the litigation between them which occasioned its making, and, the Bank having failed meanwhile, complainants are now entitled only to prorate with the general creditors of the Bank. If, however, the deposit was special, complainants did not by the act of deposit part with the title to the particular funds deposited, the Bank had no right to mingle the moneys deposited with its own property, or to use the same, and must return the identical funds deposited; for it then occupies the position and assumed the obligation of a bailee and not a debtor.

Mr. Justice Miller, delivering the opinion of the court in Marine Bank v. Fulton Bank, 2 Wall. 252, 17 L. Ed. 785, said:

"All deposits made with banks may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter, and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money and loans it to the banker, and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand. The case before us is not of the former class. It must be of the latter."

Mr. Justice Brewer, delivering the opinion of the court in Commercial Bank of Penn. v. Armstrong, 148 U. S. 50, 13 Sup. Ct. 533,

37 L. Ed. 363, after quoting the foregoing language with approval, said:

"That reasoning is applicable here. Bearing in mind the custom of banks, it cannot be that the parties understood that the collections made by the Fidelity, during the intervals between the days of remitting, were to be made special deposits; but, on the contrary, it is clear that they intended that the moneys thus received should pass into the general funds of the bank, and be used by it as other funds, and that, when the day for remitting came, the remittance should be made out of such general funds."

It is the business of a bank, and one of the purposes for which it was created, to receive the money of its depositors on the implied agreement to return a like amount on demand or in a stipulated length of time, with or without interest, as the case may be, and to loan such money to its customers, receiving compensation by way of interest charged. Banks are not created for the purpose of acting as bailees of the property of others, either with or without hire. While a national bank by contract may possibly bind itself to such legal relation, it is quite clear this may be done only either by express contract or the transaction of deposit must, from its very nature, be of such character as to imply such obligation and relation. Mr. Morse, in his work on Banks and Banking (2d Ed. p. 69), says:

"Ordinarily, a deposit of money, at least if it be the current money of the country or state where the deposit is made, will be assumed to be a general deposit, unless the contrary is at the time directly notified, or in some shape distinctly implied, so that the bank could not reasonably misunderstand the depositor's intent."

As it is stipulated by the parties, there was no express agreement or understanding between the parties in this case that the deposit made should be considered as special, and, as there was nothing in the character of the transaction had in this case from which there may be found an implied agreement or understanding between the parties to that effect, it must be held the deposits made were general, and not special.

Much reliance is placed by complainants on the case of Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769. However, an examination of that case will disclose it is not in point. The facts in that case were these: Hopkins, being indebted to his bankers, A. T. Stewart & Co., on a promissory note secured by a real estate mortgage, forwarded certain drafts, with directions to credit as payment on his note, on receipt of which Stewart & Co., in violation of the express direction of Hopkins to credit as payment on his note, gave him credit on open account with the bank. In that case no question of deposit arose for decision, for the reason Hopkins did not consent to become a depositor with the bank. On the contrary, that was a case of misapplication of the remittance received by Stewart & Co. from Hopkins, by giving credit instead of making payment. Stewart & Co., on account of such misapplication of the funds of Hopkins, was held at the suit of his trustee in bankruptcy a trustee ex maleficio. To like effect is the case of People v. City Bank of Rochester, 96 N. Y. 32.

It follows complainants in this case in equity may be accorded at the hands of defendant, as receiver of the Bank, the rights of a general

creditor of the estate of the Bank in his hands, and receive payment therefrom pro rata with the general creditors therein.

A decree will enter in conformity with the views expressed in this opinion.