## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### LYNCHBURG MOTOR COMPANY, A CORPORATION, v. F. L. THOMASSON, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF H. S. BERGER.

#### January 15, 1925.

1. BANKRUPTCY AND INSOLVENCY—*Automobile Company Seizing and Selling Car under Conditional Sale Contract at Instance of its Assignee—Trustee as to Surplus.*—An automobile company at the instance of its assignee, a finance company, upon default of a buyer of a car in the payment of purchase money notes, seized and sold the car, as the contract of conditional sale provided, and paid the finance company from the proceeds the balance due upon the car.

   *Held:* That the relationship of the automobile company in the premises was that of trustee acting in the execution of a trust, and that it held whatever was the surplus in its hands, after defraying the expenses and the payment of the unpaid notes, in the relationship or capacity of a trustee, and it cannot set off in action by the trustee in bankruptcy of the buyer of the car the personal indebtedness of the bankrupt to it.

2. BANKRUPTCY AND INSOLVENCY—*Set off—Inconsistent Relations.*—The right of set off as against the demand of a trustee in bankruptcy against a debtor of the bankrupt, is to be determined upon consideration of whether the respective claims and liabilities were held in the same right or in inconsistent relations of the parties as of the date of the filing of the petition in bankruptcy. The inquiry is, were the respective debts and credits "mutual" as of that date?

3. BANKRUPTCY AND INSOLVENCY—*Set off—Trustee.*—Under section 68 of the bankrupt act (U. S. Comp St. §9652), where one who stands in the relationship of a trustee has a fund in hand payable to a bankrupt, he cannot set off against his indebtedness therefor an individual debt of the bankrupt to him, because in such case the respective debts and credits are held in inconsistent relations, *i. e.*, are not "mutual."

4. CONDITIONAL SALE—*Automobiles—Commission on Resale.*—A conditional sale contract of an automobile provided that if the dealer upon default of the purchaser resold the car, he should be entitled to the "expenses incurred in the resale."

*Held:* That the dealer was not entitled to a commission upon a resale. The making of a sale is a personal service, and is not, according to the ordinary and usual meaning of the term, an expense incurred.

5. CONDITIONAL SALE—*Automobiles—Expenses of Resale—Repair of Car Taken in Exchange.*—In an action to recover surplus in the hands of a dealer upon resale of a car sold conditionally, the dealer complained that an instruction refused to allow him to deduct the expense of repairing a car that he took on part payment on the resale. The instruction did not refer to this car specifically, but it allowed the jury to deduct for all repairs and from the verdict it appeared the jury allowed for the repair of the car taken in exchange.

*Held.* No error.

6. SETOFF—*Account—Unexplained Item.*—In an action against a dealer for surplus from resale of an automobile, sold by him conditionally upon default of buyer, the defendant pleaded setoff and filed an itemized account. One item of this account was undated and gave no information as to what it was for, nor did the testimony.

*Held.* That the jury was warranted in disregarding the item.

Error to a judgment of the Corporation Court of the city of Lynchburg, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action at law by notice of motion, brought by F. L. Thomasson, trustee in bankruptcy of the estate of H. S. Berger (hereinafter called plaintiff), against Lynchburg Motor Company, a corporation (hereinafter called defendant), to recover a certain amount of surplus of money which came in the hands of the defendant company by reason of the resale by the latter of a certain automobile, under and in pursuance of the terms of a certain conditional sale contract, the surplus being left in the hands of the defendant company from the proceeds of the resale, after deducting certain expenses, and after the payment of certain outstanding and unpaid notes of said Berger, originally given by him to the defendant company for deferred

payments of purchase money for said automobile, which was originally sold by the latter to Berger, the payment of which notes was secured by said contract.

The defendant company and the said Berger were designated in said contract as "seller" and "purchaser" respectively; and among other things, not material to be stated, the contract provided that should the "purchaser" fail promptly to pay at maturity any of the said notes, "or whenever the seller or his assigns shall deem the debt insecure, said seller may * *, without any demand or notice, take possession of (said automobile). * * Purchaser agrees that seller may sell said (automobile) so retaken, at public or private sale, with or without notice to the purchaser * * upon such terms and in such manner as seller may determine; and * * the proceeds of such sale, after deducting therefrom all expenses incurred in the repossession, removal, reparation, storage and sale of said (automobile), * * shall be applied to the amount due holder of said (notes), and any surplus shall be paid over to the purchaser; * *"

There was also provision in the said contract to the effect that upon default in the payment of any of said notes, all remaining unpaid notes should thereupon become due and payable.

The said notes were indorsed by the defendant, and the notes and the conditional sale contract aforesaid, and all the right, title and interest of the defendant therein, were assigned and the notes and contract were delivered to a Maryland corporation, of Easton, Md. (hereinafter called Maryland corporation, or assignee).

The "purchaser," Berger, failed to pay at maturity three of said notes for $114.45 each, which matured in December, 1921, and in January and February, 1922. There was also another of said notes which had not yet

fallen due, which was then unpaid. Thereupon the Maryland corporation wrote the defendant company, on March 3, 1922, the following letter:

"March 3, 1922.

"LYNCHBURG MOTOR COMPANY,
   "Lynchburg, Va.
      "Re: Henry S. Berger.
"Gentlemen:

"The above party has three payments of $114.45 each overdue since the 30th of December and January and February 28th. This account must positively be put in shape at once and we are calling upon you as endorsers to either see that this is taken care of by the purchaser or we will ask that you honor your endorsement by forwarding remittance.

"We have not handled this account in the usual way, owing to the fact that we continually had promises that it would be taken care of. We are demanding that you immediately assume possession of the car if the purchaser does not bring his account up to date, as we think this is absolutely necessary for your protection.

"We shall await your advices, for which purpose we are enclosing stamped envelope.

"Yours truly,
   "MARYLAND CREDIT-FINANCE CORP.
      "(Signed)  F. Prescott, Secretary."

Following the receipt by it of this letter, the defendant, through its president, some time between March 3 and 26, 1922, took said automobile from said Berger into its own possession, in pursuance of such letter and under the provisions of said conditional sale contract.

When the defendant took the automobile into its possession, as aforesaid, through its president, the

latter told Berger that he had had a letter from the Maryland corporation about the matter "and for that reason he had to take possession of the automobile."

On March 27, 1922, the defendant had a long distance telephone conversation with the Maryland corporation, in which the defendant stated, in substance, that it had repossessed the automobile and would forward its check for the amount of the notes which remained outstanding and unpaid, in fulfilment of its obligation as endorser thereon.

On the same date the Maryland corporation confirmed such telephone conversation by the following letter to the defendant company:

"March 27, 1922.

"LYNCHBURG MOTOR COMPANY,
  "808 Commerce Street,
    "Lynchburg, Virginia.
      "Re: H. S. Berger.
"Gentlemen:

"We beg to confirm telephone conversation with you advising that you had repossessed the Nash car sold the above purchaser and would send us check to cover the amount outstanding, the exact amount of which is $464.11.

"Thanking you for your prompt attention to this, we are

"Yours very truly,
"MARYLAND CREDIT-FINANCE CORP.,
"(Signed)  B. H. Trippe, President."

Up to this time the said Berger had not filed his petition in bankruptcy and was personally indebted to the defendant company, such indebtedness consisting of $262.00 unpaid balance on a certain note given by Berger to the defendant in 1921, and $207.03 on open account; none of which indebtedness was secured by said contract.

Subsequently, on April 5, 1922, the said Berger filed his petition in bankruptcy and was that day duly adjudicated a bankrupt and said plaintiff was duly appointed and qualified as trustee of the bankrupt's estate.

Thereafter, the defendant, after putting it in "thorough repair," resold the said automobile for $350.00 and a second hand Ford coupe, taken in exchange; and after putting the Ford coupe in "thorough repair" sold that for $450.00, making a total of $800.00, gross amount received from such source by the defendant company.

On April 14, 1922, after the filing of the petition in bankruptcy, the defendant mailed its check to the Maryland corporation for $464.11, in payment of the aforesaid outstanding and unpaid notes in discharge of the obligation of the defendant as indorser thereon.

In the grounds of defense filed by the defendant it took two positions, namely, first, it denied that "there was any surplus received by it upon the sale of the automobile;" and, secondly, it averred that, if there was any such surplus, the bankrupt, Berger, was at the time of the filing of the petition in bankruptcy indebted to the defendant in a sum in excess of such surplus; that this indebtedness arose upon mutual accounts between the defendant and the bankrupt; that the defendant pleaded the same as set-off against the plaintiff's demand; and filed an itemized account of such set-off, in which are set forth the items of—

"The aforesaid balance on the Berger
1921 note_____    $262.00
"The aforesaid open account prior to
March, 1922, its items amounting to      207.03
" And the following later items:
"1922.
"March 23, labor_____    $4.50

| | | | |
|---|---|---|---|
| | "2 spark plugs_____$ | 2.00 | |
| | "Fixing light_____ | 1.25 | |
| "April 1, | Labor_____ | 2.00 | |
| | "1 F. wheel spider____ | 12.75 | |
| | "Labor_____ | 2.50 | |
| | | | ——$ 25.00 |
| "20.95 | | | 20.95 |

"Making a total of_____        $514.98."

The action of the court in giving and refusing instructions was as follows:

*Instructions Asked for by Defendant and Refused.*

1. "The court instructs the jury that when the automobile in question was resold by the defendant, after having been retaken from Berger, the defendant had the right to apply the proceeds of any such resale first to the payment of the balance due under the conditional sale contract, second to the amount due the defendant for repairs made by the defendant upon said automobile either while the same was in the possession of Berger or after the said automobile had been retaken from Berger by the defendant and before the defendant resold the same, and third to the payment of any other indebtedness that might be due to the defendant by H. S. Berger, whether the same was evidenced by a note or by open account, and if there was no surplus left in the hands of the defendant after making payment, in whole or in part, of the above mentioned obligations, the jury must find for the defendant.

2. "The court instructs the jury that if they believe from the evidence that the amount of the indebtedness due by H. S. Berger to the Lynchburg Motor Company was equal or greater than the amount of the plaintiff's claim, then the jury shall find for the defendant.

3. "The court instructs the jury that the plaintiff's claim in this case is the value of the automobile in question after deducting therefrom the balance due under the conditional sale contract, and if the automobile was not worth at the time it was retaken from Berger any more than the balance due and secured under the conditional sale contract, they shall find for the defendant."

And thereupon, the court, over defendant's objection, modified and gave the defendant's instruction No. 1 and gave an instruction of its own, which last two mentioned instructions are all of the instructions given by the court and which are hereinafter immediately set forth in full:

### All the Instructions Given by the Court.

A. "The court instructs the jury that when the automobile in question was resold by the defendant, after having been retaken from Berger, the defendant had the right to apply the proceeds of any such resale first to the payment of the balance due under the conditional sale contract, second to the amount due the defendant for repairs made by the defendant after the said automobile had been retaken from Berger by the defendant and before the defendant resold the same.

B. "The court instructs the jury that if they believe from the evidence that the Lynchburg Motor Company assigned the conditional sale contract of Berger to the Maryland Credit-Finance Corporation, and in March, 1922, repossessed the car covered by said contract and sold same as agent for the assignee after Berger went into bankruptcy, then the defendant is not entitled to offset any claim it may have against the trustee in bankruptcy."

There was a verdict for the plaintiff for the sum of $310.89, and the judgment under review was entered accordingly.

*E. T. Boyd* and *John D. Easley*, for the plaintiff in error.

*E. Marshall Frost*, for the defendant in error.

SIMS, P., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for decision by the assignments of error will be disposed of in their order as stated below.

[1, 2] 1. Was there sufficient evidence before the jury to support the finding of fact that the defendant, at the time it took repossession of the automobile, was acting as a trustee in execution of a trust, upon which theory instruction "B" given by the trial court was manifestly predicated?

The question must be answered in the affirmative.

Upon the decision of this question depends the right, or lack of right, of set-off claimed by the defendant, and it involves the proper construction of the following provisions of the bankrupt act, §68 (U. S. Comp. St. §9652); namely:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set-off against the other, and the balance only shall be allowed or paid    *    *."

That is to say:

2. Is the instant case one of "mutual debts or mutual credits," within the meaning of this statute?

That question must be answered in the negative.

6

It is settled, and is uncontroverted before us, that the right of set-off as against the demand of a trustee in bankruptcy, in an action such as that before us, is to be determined upon consideration of whether the respective claims and liabilities were held in the same right or in inconsistent relations of the parties as of the date of the filing of the petition in bankruptcy. The inquiry is, were the respective debts and credits "mutual" as of that date? Now the evidence shows, without conflict, that the relationship of the parties was the same at the date just mentioned that it was at the time the defendant took repossession of the automobile. Therefore, whether the respective debts and credits were "mutual" in the instant case depends upon what was the relationship or capacity, in which the defendant was acting when it took repossession of the automobile. That the resale of the automobile was made after the filing of the petition in bankruptcy is immaterial.

It appears from the evidence that the defendant took repossession of the automobile, on the demand of the assignee, the Maryland corporation, under the provisions of the conditional sale contract, upon default having been made in the payment of certain unpaid notes secured by that contract, and that the primary object for which such repossession was taken, and on which alone the right to take such repossession rested, was the resale of the automobile by the defendant under the provisions of the contract in order to pay the amount of the unpaid notes; the defraying of the expenses mentioned in the contract, and the paying over of the surplus left in hand to the bankrupt being merely incidental to the aforesaid primary object. The relationship of the defendant to the transaction was, in substance, the same as if he had been acting under

precisely the same powers conferred upon him by a deed of trust, instead of by the conditional sale contract. And since at the time of the repossession of the automobile, and up to the date of the filing of the petition in bankruptcy, the notes had not been paid to the Maryland corporation, there is no escape from the conclusion that the defendant, at the time of the filing of the petition in bankruptcy, was acting in the premises as trustee for the benefit of the Maryland corporation. The circumstance that the defendant may have been also, at the same time, acting for the benefit of itself, because of its obligation as endorser upon the notes, cannot alter the fact that it was then acting as trustee, as aforesaid. And, whether also acting for its own benefit or not, it was acting as trustee for the bankrupt.

It seems plain, therefore, that the relationship of the defendant in the premises was that of a trustee, acting in execution of a trust, and that it held whatever was the surplus in its hands, after defraying the expenses and the payment of the unpaid notes aforesaid, in the relationship or capacity of a trustee.

[3] The repeated holding of the Supreme Court, which, of course, is the final arbiter upon the subject, is that, under section 68 of the bankrupt act, aforesaid, where one who stands in the relationship of a trustee has a fund in hand payable to a bankrupt, he cannot set-off against his indebtedness therefor an individual debt of the bankrupt to him, because in such case the respective debts and credits are held in inconsistent relations, *i. e.,* are not "mutual." *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502, 25 S. Ct. 339, 49 L. Ed. 571, 574; *Libby* v. *Hopkins,* 104 U. S. 303, 26 L. Ed. 769. See also *Morris* v. *Windsor Trust Co.,* 213 N. Y. 27, 106 N. E. 753, 755, Ann. Cas. 1916C, 972.

In the *Western Tie, etc., Co. Case,* the defendant company, in an action against it by the trustee in bankruptcy, sought to set-off an individual debt of the bankrupt to it, as against its liability to the bankrupt for certain money (referred to in the opinion as "deductions") which was received by it subject to certain prescribed conditions. The Supreme Court denied the allowance of the set-off, and in the opinion said this: "* * as to such deductions, the tie company stood towards Harrison (the bankrupt) in the relation of a trustee; and, therefore, the case was not one of mutual credits and debts within the meaning of the set-off clause of the bankrupt law. *Libby* v. *Hopkins,* 104 U. S. 303, 26 L. Ed. 769."

In the *Windsor Trust Co. Case,* the plaintiff was the trustee in bankruptcy who sued a pledgee of property for the refusal to deliver the subject of the pledge after the payment of the debt it was pledged to secure, and the defendant sought to set-off counter claims against the bankrupt not based on or connected with the pledge contract; and the court, in refusing to allow the set-off, in the opinion delivered by Cardoza, J., said this: "The law is settled that if the defendant held the pledge in trust for the bankrupt, it cannot offset a debt that belongs to it in its own right. I think that, within the meaning of the rule which forbids a set-off of claims and liabilities held in inconsistent relations, a trust existed here. Within the meaning of that rule a trust may exist, though it results by implication of law from the relation between the parties. * * Indeed, the trust that was held to exclude a set-off in *Libby* v. *Hopkins,* (and) in *Western Tie, etc., Co.* v. *Brown* * * was not a technical or special one. It was rather one implied by law from the receipt of property or money subject to certain prescribed conditions. * * They were trus-

tees within the meaning of the rules of set-off, alike in bankruptcy and in equity."

In the argument in behalf of the defendant the following citation from 1 Loveland on Bankruptcy, page 659, is strongly relied upon, namely: "Where there is a debt on one side and on the other a delivery of property with power to turn it into money, he may turn it into money and the two debts may be set-off one against the other. The test is whether the credit given by the delivery of the property must in its nature terminate in a debt. Thus, a creditor, who at the time of the bankruptcy has in his hands goods or chattels of the bankrupt with a power of sale or choses in action with a power of collection, may sell those goods or collect those claims and set them off against the debt the bankrupt owes him, and this although the power to sell or collect were revocable by the bankrupt before his bankruptcy."

But we do not apprehend that it is here meant that this doctrine is applicable to cases which involve a trust. Several decisions are cited by this learned work to support the text just quoted, but none of them gives any consideration to the question of whether a trust was involved therein. Two of such decisions, namely, *Ex parte Whiting*, No. 17573 Fed. Cas., 2 Low. 472, and *In re McVay* (D. C.), 13 Fed. 443, and those two only, involve facts from which a trust might have been implied; but that subject is not mentioned in the opinions in those cases. However, if they could be considered as sustaining such doctrine as applicable to cases which involve a trust, they would be in conflict with the aforesaid later Supreme Court decisions, and therefore could not be followed by us.

[4] 2. Was instruction "A" erroneous in that it took from the jury the right to allow the defendant any compensation, such as a commission on the price obtained,

for its own services in making the resale of the automobile, or in making resale of the Ford coupe taken in exchange in the resale of the automobile?

The question must be answered in the negative.

The provision of the conditional sale contract, so far as applicable to the question under consideration, allowed the defendant only "expenses incurred in" the resale. The making of a sale is a personal service and is not, according to the ordinary and usual meaning of the term, an expense incurred. Moreover, the grounds of defense claimed no compensation for making the resales.

[5] 3. Did instruction "A" refuse to allow the jury to consider and deduct the expense of repairing the Ford coupe?

The question must be answered in the negative.

It is true that the instruction does not specifically mention the repairs of the Ford coupe; but it allowed the jury to deduct the amount due the defendant for all repairs made after the automobile was taken from Berger, which included the repairs of the Ford coupe. Further: The testimony on the subject gave no information as to what were the items of the repairs on the respective vehicles, or as to the dates thereof, other than that they were "thorough" repairs and made on different dates. When the testimony is read along with the account filed by the defendant, we think the jury were warranted in considering the items thereon of date March 23, 1922, aggregating $7.75, as covering the repairs of the automobile and the items of date April 1, 1922, aggregating $17.25, as covering the repairs of the Ford coupe. And when the amount of the verdict is considered in the light of the evidence, including the account, we are satisfied that the jury deducted both of the sums just mentioned as covering all of the repairs aforesaid, including the repairs of the Ford coupe.

[6] The last item on the account merely states the amount of $20.95, gives no date and no information as to what it was for. The testimony gives no information as to it. That being true, the jury were fully warranted in disregarding such item entirely, which we are satisfied from the record is what they did.

The case will be affirmed.

*Affirmed.*