ALBERT G. WALKER, as Trustee in Bankruptcy of FREDERICK SOUTHACK & ALWYN BALL, JR., INC., Plaintiff, v. ALRICH H. MAN and Others, Defendants.*

Supreme Court, New York County, February 5, 1931.

*Robert P. Levis* [*David L. Podell, Mortimer Hays* and *Julius J. Nirenstein* of counsel], for the plaintiff.

*Davies, Auerbach & Cornell* [*Martin A. Schenck* of counsel], for the defendants Man and others.

*Hawkins, Delafield & Longfellow,* for the defendant Wadham.

*Greene & Hurd* [*Daniel S. Murphy* of counsel], for the defendants John Lowry and John Lowry, Inc.

COLLINS, J. The plaintiff, as trustee in bankruptcy of Frederick Southack & Alwyn Ball, Jr., Inc., moves to strike out and dismiss the third, fourth and fifth defenses pleaded as counterclaims in the answer of the defendant Wadham. The amended complaint alleges eleven causes of action charging the defendants, as directors of the bankrupt corporation, with various acts of nonfeasance and misfeasance in the management of the business of the bankrupt. For wrecking the corporation, recovery is sought in the sum of $1,677,411.19.

The answer of the defendant Wadham, after denying the charges, asserts seven separate defenses, the third, fourth and fifth by way of counterclaim or setoff. The third defense and counterclaim

* See, also, 142 Misc. 277, 293.

alleges that in or about May, 1926, he advanced $10,000 to the bankrupt corporation, no part of which has been paid, excepting the sum of $19 05. The fourth defense and counterclaim asserts a loan by Wadham to the bankrupt corporation in or about July, 1926, of another $10,000, no part of which has been paid The fifth defense and counterclaim, after realleging the third and fourth defenses, avers that in or about July, 1926, the bankrupt did not have sufficient cash on hand to pay and discharge its obligations to the owners of buildings for moneys received by the bankrupt, as the agents of such owners and that John Lowry, Inc., who was a creditor of the bankrupt by virtue of its having built the Thayer West Point Hotel, in which the bankrupt was interested, was insisting that the bankrupt pay it not less than $50,000 on account, and that the bankrupt was unable to do so. Accordingly, this fifth defense and counterc'aim alleges, to provide the corporation with cash to pay the obligations to the owners of the buildings which the bankrupt represented as agent, to pay the $50,000 to John Lowry, Inc., to relieve the bankrupt's temporary financial embarrassment, and to enable it to continue in business, and, if possible, rehabilitate its affairs, the defendant Wadham advanced to the bankrupt the $20,000 heretofore mentioned, and the defendants Comstock, Man, Perrine and Guggenheim, at the request of the bankrupt, indorsed the bankrupt's note for $140,000 under the terms of a written agreement annexed to the answer, and that as a part of that transaction there was assigned to the defendants Comstock, Man, Perrine and Guggenheim certain assets of the bankrupt; that, also, as a part of the transaction, the board of directors of the bankrupt authorized the organization of, and there was formed, a corporation called Southack & Ball Management Corporation to take over the management business of the bankrupt, in consideration of the issue to the bankrupt of all of the stock of the management corporation; that, thereupon, the bankrupt transferred all of its assets to the management corporation for 1,000 shares of the latter's stock; that, as part of this transaction, the bankrupt pledged the 1,000 shares of the management corporation stock to the defendants Comstock, Man, Perrine and Guggenheim as collateral, in addition to the collateral theretofore pledged, to secure them for their indorsement of the bankrupt's note for $140,000.

Wadham's answer proceeds to allege that after the bankruptcy he and the defendants Comstock, Man, Perrine and Guggenheim foreclosed their liens and sold the collateral pledged by the bankrupt, and filed their claims in the bankruptcy proceeding for the balance claimed to be due them after such sale, such balance being $21,422.60

to Wadham, and $128,876.90 to Comstock, Man, Perrine and Guggenheim; that such claims were allowed over objection. This fifth defense and counterclaim concludes with the allegation that, by reason of the foregoing, the plaintiff, representing the bankrupt, is indebted to Wadham in the sum of $21,422.60, which he pleads as a setoff.

These three separate defenses and counterclaims are assailed by the plaintiff on five grounds. The primary one, and that most stressed, is that the counterclaims are not ones which may be properly interposed in this action.

Thus, this motion presents the significant question of whether, in an action by a trustee of a bankrupt corporation against a director for maladministration of the corporate affairs, the director may offset an indebtedness due him from the corporation.

The position of the defendant Wadham as a director of the bankrupt is defined in *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185, 193) thus: " The prerogatives and functions of the directors of a private business corporation are sufficiently defined and established. The affairs of the corporation shall be managed by its board of directors. The relation of the directors to the stockholders is essentially that of trustee and *cestui que trust*. The directors are bound by all those rules of conscientious fairness, morality and honesty in purpose, which the law imposes as the guides for those who are under the fiduciary obligations and responsibilities. They are held, in official action, to the extreme measure of candor, unselfishness and good faith. Those principles are rigid, essential and salutary. (*Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113, 124.) "

May one so situated, who has violated his trust, invoke the principles of setoff and counterclaim?

Section 68 of the Bankruptcy Act (U. S. Code, tit. 11, § 108) provides:

" (a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

" (b) A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate; or (2) was purchased by or transferred to him after the filing of the petition, or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent, or had committed an act of bankruptcy."

The above section, however, " was not intended to enlarge the doctrine of set-off, or to enable a party to make a set-off in cases

where the principles of legal or equitable set-off did not previously authorize it." (*Sawyer* v. *Hoag*, 17 Wall. 610, 622.)

*Morris* v. *Windsor Trust Co.* (213 N. Y. 27, 29) is decisive of the question under consideration. There a trustee in bankruptcy sued a pledgee for refusal to deliver property pledged by the bankrupt to secure a debt, the debt having been paid. The pledgee sought to counterclaim an indebtedness due him arising out of other transactions than that set forth in the complaint. It was held that the counterclaims did not come within the clauses enumerated in section 266 of the Civil Practice Act, nor could they be sustained as set-offs either under section 68 of the Bankruptcy Act (U. S. Code, tit. 11, § 108) or under the general principles of equity. Judge CARDOZO said: " I think the set-off is without sanction, either statutory or equitable. A wrong-doer who has misapplied the subject of a trust is not entitled, either under the Bankruptcy Act or under the rules of equitable set-off, to apply a credit that belongs to him in his own right in cancellation of his liability as a fiduciary. * * * The law is thus settled that if the defendant held the pledge in trust for the bankrupt, it cannot offset a debt that belongs to it in its own right. I think that, within the meaning of the rule which forbids the set-off of claims and liabilities held in inconsistent relations, a trust existed here. Within the meaning of that rule a trust may exist, though it results by implication of law from the relation between the parties."

This defendant seeks to weaken the application and force of the doctrine expressed in the *Morris* case by indicating that the counterclaim pleaded there was not connected with the transaction set forth in the complaint.

I do not read that case as holding that a counterclaim by a fiduciary which *is* connected with the transaction set forth in the complaint may be pleaded. Even if the counterclaim here asserted came within the meaning and intent of section 266 of the Civil Practice Act, it could not be availed of here because fundamental principles of justice and equity oppose it.

In the *Morris* case it was held: " The respondent insists that section 1, subdivision 11, of the present Bankruptcy Act has changed the law of set-off in providing that ' " debt " shall include any debt, demand or claim provable in bankruptcy.' The act still provides, however, that set-off is not to be allowed unless the debts are mutual, and debts are not mutual unless held in the same right. (*Sawyer* v. *Hoag*, 17 Wall. 610, 622; *Middleton* v. *Pollock*, L. R. [20 Eq.] 29; *Weston* v. *Barker*, 12 Johns. 276.) " (Also *Britton* v. *Ferrin*, 171 N. Y. 235.)

The principle of the *Morris* case has been followed in other

jurisdictions. (*Putnam* v. *Handy*, 251 Mass. 196; 146 N. E. 264; *Matter of La Jolla Lumber & Mill Co.*, [D. C.] 243 Fed. 1004; *Lynchburg Motor Co.* v. *Thomasson*, 141 Va. 153; 126 S. E. 64; *Libby* v. *Hopkins*, 104 U. S. 303; 26 L. Ed. 769; *Palmer* v. *Doull Miller Co.*, [D. C.] 233 Fed. 309; *Topas* v. *John MacGregor Grant, Inc.*, [C. C. A.] 18 F. [2d] 724.)

The determination of the referee in bankruptcy cannot be accepted here as *res adjudicata* for all purposes.

As recently as January 30, 1931, the First Department held that a decision of a referee in bankruptcy determining a certain payment to be a preference was not binding on the State court respecting the determination of value. (*Shea* v. *Riverview Canning Co.*, 231 App. Div. 535, 539.) The *Shea* holding was predicated mainly on *Rudd* v. *Cornell* (171 N. Y. 114, 127), where it was said: " It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the same parties or their privies, and that the conclusive character of a judgment extends only to the precise issues which were tried in the former action; they must be identical in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment must show affirmatively that the question involved in the second action was material and actually determined in the former, as a former judgment will not operate as an estoppel as to immaterial or unessential facts, even though put in issue and directly decided. In other words, a former judgment is final only as to the facts which are actually litigated and decided, which relate to the issue therein, and the determination of which was necessary to the determination of that issue. (*Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635, 651.) "

The effect of permitting these counterclaims to prevail would be to accord one guilty of wrongdoing to obtain a preference over the general creditors of the bankrupt. To disallow the offset, it seems to me, is in consonance with law and right.

Accordingly, the motion of the plaintiff is granted.