**Winthrop J. ALLEGAERT, as Trustee of duPont Walston Incorporated, Plaintiff,**

v.

**H. Ross PEROT et al., Defendants.**

**No. 75 Civ. 3214.**

United States District Court,
S. D. New York.

Nov. 30, 1978.

Hughes, Hubbard & Reed, New York City, by Robert J. Sisk, George A. Davidson, Karen G. Lind, New York City, of counsel, for plaintiff.

Weil, Gotshal & Manges, New York City, by Peter Gruenberger, Henry Tashman, Irwin Warrer, New York City, of counsel, for H. Ross Perot.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

In this plenary action, Winthrop J. Allegaert, trustee in bankruptcy of duPont Walston Incorporated ("Walston") alleges that through a series of fraudulent transactions beginning in July 1973, the various defendants brought about Walston's insolvency by causing Walston's assets to be transferred to defendant duPont Glore Forgan Incorporated and others, and causing duPont Glore Forgan's liabilities to be transferred to Walston. Accordingly, the trustee charges the various defendants with breaching their fiduciary duties and with violating the Federal Securities Laws, the Bankruptcy Act, the New York Debtor and Creditor Law, and the Delaware Corporation Law.

In answer, the various defendants, seeking a set-off under Section 68 of the Bankruptcy Act, allege that Walston, through misrepresentations, caused them to purchase Walston securities from the company at a time when it was actually failing. They charge Walston with violating the Federal Securities Laws, and Walston officers with misconduct. The trustee in bankruptcy moves to dismiss these set-offs and to strike the defense of officer misconduct.

**518**

In support of its motion to dismiss, the trustee makes three principal arguments. First, that those who are charged with the breach of a fiduciary duty to a bankrupt may not receive the benefits of set-off. Second, that the debts underlying the defendants' claims are subordinated and therefore do not satisfy the mutuality requirement of Section 68, and finally that the defendant's 10B–5 claims in set-off are claims sounding in tort and therefore are not provable under Section 63. We will discuss these arguments *seriatim,* and then turn to the motion to dismiss the claims and strike the defenses of officer misconduct.

This motion to dismiss focuses upon Section 68 of the Bankruptcy Act. That provision provides that "in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." Bankruptcy Act § 68, 11 U.S.C. § 108.

The trustee correctly points out that a creditor invoking Section 68 gains a preferred position over other creditors in that he receives full recovery on his debt, whereas other creditors are relegated to satisfaction of their claim from those assets remaining in the bankrupt's estate. In other words, Section 68 works as a statutorily created preference.

Because of the great potential for abuse, Section 68(A) provides that the debts involved must be mutual, and Section 68(B) provides that the debts must be provable and allowable. Two of the trustee's arguments on this motion go to the lack of mutuality. The third argument alleges nonprovability.

■ Mutuality in the context of Section 68 means that the debt or credit must be "in the same right and between the same parties, standing in the same capacity." 4 Collier on Bankruptcy § 68.04[2](1) (14th

Ed.1977) For example, a claim against a bankrupt as an administratrix could not be set off against a debt owing to the bankrupt as an individual, *Matter of Tietje,* 263 F. 917 (E.D.N.Y.1920), and likewise, a claim against a creditor for damages to property belonging to the bankrupt's assignee could not be set off against the creditor's claim against the bankrupt estate. *In re Bevins* (2d Cir. 1908) 165 F. 434.

■ Courts have also held that when the liability of the party seeking set-off arises from either a fiduciary duty or a trust, there is a lack of mutuality, and set-off will not be permitted. *Western Tie and Timber Co. v. Brown* (1904) 196 U.S. 502, 25 S.Ct. 339, 49 L.Ed. 571, *Bayliss v. Rood* (4th Cir. 1970)[1] 424 F.2d 142. The trustee points out that on motion, courts will prevent defendants charged with breaching a fiduciary duty from pleading set-off, citing three cases for this proposition, *Palmer v. Doull Miller Co.* (S.D.N.Y.1916) 233 F.2d 309, *Walker v. Man* (Sup.Ct.1931) 142 Misc. 288, 253 N.Y.S. 472 and *Putnam v. Handy* (1965) 251 Mass. 196, 146 N.E. 264. While some have labeled these cases "hoary," we accept their continued validity. However, we also agree with the defendant that these cases are not here determinative.

In all three cases the defendant's potential liability to the bankrupt was based *solely* on the breach of fiduciary duties. As a result, defendant's liability, if established, would necessarily arise from his fiduciary duty, and the attempted set-off of his personal claim would not satisfy the mutuality requirement. On the other hand, if plaintiff failed to prove liability, there would be no debt against which to set anything off. In such a situation there can be no purpose in permitting the defendant to prove his claim. That is not the case here.

■ Here, the trustee in bankruptcy has charged the defendants not only with the breach of fiduciary duties, but with viola-

---

1. Some courts which have denied set-off when liability arises from a fiduciary duty or trust have referred to the inequity of allowing a creditor guilty of a fraudulent transaction toward the bankrupt to receive full payment on a claim. *E. g. Palmer v. Stokely* (W.D.Okl.1966) 259 F.Supp. 776. We regard these statements as dicta. The decisions in each case can be supported solely on the lack of mutuality.

tions of the Bankruptcy Act, Securities Acts, New York Debtor and Creditor Acts and the Delaware Corporation Law. In other words, the trustee could successfully establish liability without proving the breach of any fiduciary duty. The rationale of judicial economy underlying *Palmer, Walker* and *Putnam,* therefore, is without application.[2]

The trustee also argues that since the debt underlying defendants' claims is based on a contract providing for its subordination, it fails to satisfy the mutuality requirement of Section 68.[3]

■ As we have indicated, the purpose of the Section 68 requirement of mutuality is to insure that a claim asserted by the bankrupt against a party in one capacity is not set off against a claim asserted by the party in a different capacity. The requirement does not speak to subordinated claims and priority of distribution. While application of the set-off provision may appear inequitable from the point of view of the creditor since "the operation of this privilege of set-off has the effect to pay one creditor more than another", *Cumberland Glass Mfg. Co. v. DeWitt and Co.* (1915) 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042, Congress has chosen to view the problem through the eyes of the creditor who, without the Section 68 provision, would be compelled to pay in full any liability the estate might prove, while receiving only partial, if any, dividends on any claim he might establish. 4 Collier on Bankruptcy, § 68.02. Obviously, this court does not have the power to disregard Congress' mandate. In a recent case, the Second Circuit, speaking through Judge Friendly, reversed a bankruptcy court and district court which had denied set-off on equitable grounds, stating: "The rule allowing set-off, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be 'unjust.'" *In re Applied Logic Corporation* (2d Cir. 1978) 576 F.2d 952.

The trustee has cited several Second Circuit cases in supposed support of the proposition that subordinated debts may not be set off. See, e. g., *In re Stirling Homex Corp.,* 579 F.2d 206 (2d Cir. 1978); *In re Weis Securities, Inc.,* Dkt. Nos. 77–6034, 77–6038, 77–6045, 77–6048, 77–6065 (2d Cir. June 12, 1978), petition for rehearing pending; *In re Cartridge Television, Inc.,* 535 F.2d 1388 (2d Cir. 1976); *In re Credit Industrial Corp.,* 366 F.2d 402 (2d Cir. 1966). See also *In re U.S. Financial, Inc.,* 4 Bankr.Ct.Dec. 89, 91 (S.D.Cal. Mar. 22, 1978).

■ We do not find these cases relevant. They deal with priority of distribution rather than set-offs asserted in a plenary proceeding. Instead, we find support for our position in *Rochelle v. U. S.* (5th Cir. 1975) 521 F.2d 844, modified on other grounds, 526 F.2d 405 (5th Cir.), *cert. denied,* (1976) 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185, and *Hayden v. Standard Accident Insurance Co.* (9th Cir. 1963) 316 F.2d 598. In both cases, the circuit courts held that a subordinated claimant could invoke set-off under Section 68. We agree.

Tort claims are ordinarily not provable in bankruptcy. However, under Section 63(a) 4 of the Bankruptcy Act a debt is provable in bankruptcy if it is founded on either an express or implied contract.

■ The trustee, citing *Duban v. Pro Tech, Programs, Inc.* (S.D.N.Y.1977) 441 F.Supp. 467, and *Crimmins v. Crimmins* (S.D.N.Y.1975) 406 F.Supp. 282, argues that the 10B–5 claims asserted by Charleston, Mr. Gayden, and PHM cannot be pleaded as set-offs because a 10B–5 claim sounds in tort. The trustee's characterization of 10B–5 claims as intentional torts is of course correct. *Ernst & Ernst v. Hochfelder* (1975) 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668. However, for purposes of de-

---

**2.** We would like to make clear that rejection of the trustee's argument does not indicate any view as to whether or not a fiduciary relationship did in fact exist between the Perot interests and Walston.

**3.** This argument is not appropriately addressed to the claims of EDS and E.D. Systems Corporation since those claims are asserted pursuant to non-subordinated contracts.

termining provability, each 10B–5 claim must be analyzed individually to determine if it is founded purely on tort, as were the claims in *Duban* and *Crimmins,* or whether it could also be based on the breach of an express or an implied contract.

Defendants allege that as a result of Walston's misrepresentations, they were induced to enter contracts leading to purchases from Walston of its stock, warrants, and subordinated notes. Therefore, defendants argue, the 10B–5 claims are bottomed on an express contract—the purchase agreement, or in the alternative an implied contract to return monies unjustly received.

■ In support of their express contract claim defendants rely upon *Copeland v. Emroy* (D.Del.1977) 436 F.Supp. 510, affirmed mem. 586 F.2d 834 (3d Cir. 1978). That case does not support their contention. In *Copeland* a discharged bankrupt was seeking a declaratory judgment that certain 10B–5 claims being asserted against him had been provable in the bankruptcy proceeding and had therefore been discharged. Three categories of claims were before the court. In all three it was argued that Copeland had made fraudulent misrepresentations leading plaintiff claimants to enter into contractual relationships with him. In one of the categories it was further alleged that Copeland had personally guaranteed claimants against loss in connection with the fraudulently induced contract, which guarantee had been breached. The measure of damages on the failure to honor the guarantee would have been precisely the same as the measure of damages for the alleged fraud. The court held that the claim in the category involving the guarantee, but not those in the other two, were provable as based on the breach of express contracts and therefore had been discharged. In so holding the court was simply applying the doctrine of *Crawford v. Burke* (1904) 195 U.S. 176, 25 S.Ct. 9, 49 L.Ed. 147, which established that a claim which could support either a tort or a contract action would satisfy the requirements of provability.

The *Copeland* court made the limits of its holding quite clear in its opinion on reargument, when it rejected Copeland's claim that all three categories should be deemed provable because they were all "founded in contract" in the sense that they involved contractual arrangements which had been fraudulently induced. The court observed "It is not enough for Copeland to show that individual defendants and Emroy were 'contracting parties' to the entire plan of reorganization. Rather, what Copeland must show is that their remaining securities fraud claims are founded upon a breach of some contractual duty owed them by Copeland." 436 F.Supp. at 523.

■ Defendants having failed to allege any breach of a contractual duty, their claims cannot be deemed provable as founded upon an express contract. It remains to be seen whether they can be deemed provable as founded on implied contract. There defendants are on stronger ground.

Since the Supreme Court decision in *Schall v. Camors* (1919) 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247, it has been accepted that a contract implied in law to prevent the unjust enrichment of a tortfeasor will be considered an implied contract under Section 63. Courts have repeatedly applied this fictional contract analysis to cases of fraud in the inducement. *Schall, supra; In re Schenderlein* (D.C.Mass.1920) 268 F. 1018; *In re Natow Bros.* (D.Mich.1922) 283 F. 522.

Defendant's pleadings state that Charleston and Gayden entered into a purchase agreement as a result of misrepresentations and omissions. Pursuant to this agreement, Charleston and Gayden purchased from Walston, stocks, warrants and notes. Because defendants have thus pleaded facts which if proved would make out a case of unjust enrichment, we find plaintiff's characterization of the counterclaim in set-off as a "pure tort" to be inaccurate. Therefore, if defendant's allegations are proved they will have succeeded in establishing claims which would be provable in bankruptcy.

Finally, the trustee moves to dismiss the claims and strike the defenses of PHM & Co., William Gayden and Charleston Investment Company alleging misconduct by Walston's officers. While plaintiff makes the same arguments in support of the motion to dismiss and the motion to strike, we reach a different result as to each.

On the motion to dismiss, the trustee argues that the claims of misconduct are pure tort claims, and therefore may not be set off under Section 68. Defendant asserts that the claims arise out of an express or an implied contract. We reject defendant's position that the claims of misconduct arise from an express contract for reasons articulated in our discussion of the 10B-5 claims. We also do not accept the contention that the claims of misconduct are provable under a theory of implied contract. The defendants have not alleged that the Walston officers' misconduct resulted in Walston's unjust enrichment, nor could any such theory reasonably be advanced. Accordingly, the claims of misconduct may not be asserted as set-offs.

The "affirmative defenses" of officer misconduct amount to no more than assertions that such damages as Walston may have suffered were not due to any act of defendants but to the misfeasance of its own officers. Such a defense, if valid, could be established under a general denial. The defendants' inclusion of the conduct as an "affirmative defense" may therefore be disregarded as surplusage.

SO ORDERED.