## ALVORD v. RYAN.

(Circuit Court of Appeals, Eighth Circuit. March 5, 1914.)

### No. 135.

*(Syllabus by the Court.)*

1. TRUSTS (§ 35*)—TRUST PROPERTY—PROPERTY OF BANKRUPT.

    Where property of one subsequently adjudged bankrupt has, before the filing of the bankruptcy petition, been confided by such person to another for a specific purpose, and where such property is subsequently, and without modification of said original purpose, sold by such second party, the proceeds in the hands of the latter remain characterized by a trust.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

2. BANKRUPTCY (§ 326*)—CLAIMS—SET-OFF—TRUST FUNDS.

    Such trust funds may not be applied by way of set-off against a debt of the bankrupt to such second person, and this for the reason that in one instance the relation is fiduciary, in the other personal.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*]

3. BANKRUPTCY (§ 326*)—CLAIMS — SET-OFF — "MUTUAL DEBTS" — "MUTUAL CREDITS."

    Under such circumstances, these do not constitute "mutual credits" and "debits" within section 68a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]).

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*

    For other definitions, see Words and Phrases, vol. 5, pp. 4648, 4649.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. BANKRUPTCY (§ 326*)—SET-OFF—"MUTUAL CREDIT."
　　A., within two months of the filing of a bankruptcy petition against him, transferred certain property to B. and C. to indemnify them against suretyship for him upon a bond discharging an attachment issued against him. Subsequently B. and C. sold the personal property, and, after paying certain expenses of up-keep and administration, held the balance. B. had a claim against the bankrupt duly allowed in bankruptcy, and seeks to offset the proceeds of the property against the debt. *Held*, that the money held by B. to the credit of the bankrupt was not a mutual credit within section 68a of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450]) as against a debt of the bankrupt A. to such creditor B.
　　[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 514; Dec. Dig. § 326.*]

Petition to Revise Order of the District Court of the United States for the District of Utah; J. A. Marshall, Judge.

Petition by Sarah E. Alvord against T. D. Ryan, trustee in bankruptcy of Joseph L. Alvord, bankrupt, praying for a set-off of a claim against the judgment entered against her and another in the bankruptcy proceedings. Petition for set-off denied, and petition dismissed by the District Court, and she files petition to revise. Order of District Court affirmed, and petition to revise dismissed.

J. D. Skeen, D. A. Skeen, and W. H. Wilkins, all of Salt Lake City, Utah, for petitioner.

C. R. Hollingsworth, of Ogden, Utah, for respondent.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

POPE, District Judge. The facts of this case are not disputed.

Joseph L. Alvord on February 15, 1910, filed a voluntary petition in bankruptcy. An adjudication followed on February 18, 1910, and the respondent Ryan was duly appointed trustee. During the latter part of the year 1909, Alvord had been engaged in buying cattle, and on December 4, 1909, had in his possession 296 head of cattle which he had bought and for which he had issued checks on one of the Utah banks. These checks, in payment for the cattle, were issued with the specific understanding with the payees thereof that they were not to be presented for 10 days. However, this agreement was not kept. The checks were presented and payment refused by the bank for want of funds. Thereupon the payees of the checks immediately filed suits in the courts of Utah and caused attachments to issue and to be placed in the hands of the sheriff with instructions to attach and hold all property belonging to Joseph L. Alvord. The latter, believing that the cattle along with his other property had been attached, on December 4, 1909, induced the petitioner, Sarah E. Alvord, and one Hugh McLean to execute undertakings for the release from the attachment of the 296 head of cattle. The conditions of the bond were that the sureties would "on demand deliver the attached property so released to the sheriff to be applied to the payment of any judgment that may be recovered or paid to the plaintiff (in the attachment suit) the full value of all property released." By way of indemnity Joseph L. Al-

vord executed and delivered to Sarah E. Alvord and McLean on the same date a bill of sale of the 296 head of cattle, and gave them immediate possession thereof. Without further arrangement and, so far as appears from the record, without further authority from Joseph L. Alvord, the cattle were subsequently sold by these transferees. On March 8, 1910, petitioner made proof of an unsecured debt against the bankrupt estate for $3,035.12, which claim was regularly allowed by the referee. On November 10, 1911, Ryan, the trustee of the bankrupt estate, brought suit in the United States District Court for the District of Utah for the return of the 296 head of cattle, or for their value. Upon the trial of the cause the court found the defendants, Sarah E. Alvord and Hugh McLean, jointly and severally liable for $3,932.82; this being the amount realized from the sale of the cattle less a credit on account of expenditures in caring for the cattle, and a further sum of $500 attorney's fees allowed by the court as a credit against the proceeds of the sale.

On May 2, 1913, petitioner filed her petition with the referee praying for a set-off of her claim of $3,035.12, which, as we have seen, had been duly allowed in the bankruptcy proceeding, against the sum of $3,932.82 for which judgment had been entered against her and McLean jointly and severally. She prayed that she be required to pay to the trustee simply the difference between the two amounts. This petition for set-off being denied by the referee and being likewise, upon review, denied by the judge, and the petition being dismissed, the case is here upon the present petition to revise.

[1, 2, 4] The only question raised by the answer to the petition is whether the sum held by Sarah E. Alvord constitutes a subject of set-off against her claim against the bankrupt estate, within section 68a of the Bankruptcy Act. That section is as follows:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."

That the sum held by her is not available for that purpose seems to us to be conclusively settled by two decisions of the Supreme Court of the United States. In Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769, a general creditor of the bankrupt Hopkins claimed the right to apply by way of credit and set-off on his claim against the estate an amount sent him by the bankrupt, before the institution of the bankruptcy proceedings, to be applied on another and secured claim held by such creditor against the bankrupt, and which amount had not been so applied. The court held that, as this amount was in the hands of the creditor for a special purpose, it could not, upon principles of set-off, be used in extinguishment of another and different class of indebtedness. The court upon a review of the English authorities said:

"These authorities make it clear that, even under the Bankrupt Act of 5 Geo. II, the plaintiffs would have no right to the set-off claimed by them. And they lose sight of the controlling fact that the money and the drafts which they turned into money were remitted, with express directions to apply them on a specific debt. Without the consent of Hopkins they could never be changed into a debt due to him from the plaintiffs, and that consent has

never been given. Whether or not he had the right to direct the application is immaterial. There was no legal obstacle to the application as directed. The fact that he gave the direction imposed on the plaintiffs the obligation to apply the money as directed, or to return it to him. They had no better right to refuse to make the application and to retain the money and set off against it the debt due to them from Hopkins, than if they had been directed to pay the money on a debt due from him to another of his creditors, or than they had to apply to the payment of his debt to them money which he left with them as a special deposit. Hopkins sent them the money and drafts, upon the faith and trust that they would be applied according to his instructions. The refusal so to apply them did not change the relations of the parties to this fund, nor make that a debt which before such refusal was a trust. To so hold would be to permit a trustee to better his condition by a refusal to execute a trust which he had assumed."

The court further said:

"But in this case there was no deposit. The relation of banker and depositor did not arise, consequently there was no debt. When A. sends money to B., with directions to apply it to a debt due from him to B., it cannot be construed as a deposit, even though B. may be a banker. The reason is plain. The consent of A. that it shall be considered a deposit, and not a payment, is necessary and is wanting."

Continuing, the court holds as follows:

"The remitting of certain money assets by Hopkins to the plaintiffs, to be applied by them according to his instructions, did not make them his debtors, but his trustees. So that there were in the case no mutual credits or debts. The indebtedness was all on the side of Hopkins. The plaintiffs owed him nothing. They held his money in trust to apply it as directed by him. They refused to make the application as he directed. They held it, therefore, subject to his order. They continued so to hold it until the rights of the trustee in bankruptcy attached, and until he sought to recover it by his counterclaim filed in this case."

The same question was involved in Western Tie & Timber Co. v. Brown, 196 U. S. 502, 25 Sup. Ct. 339, 49 L. Ed. 571. There one Harrison was adjudged a bankrupt, and among his creditors was the tie company just named. For some years previous Harrison had owned stores in the vicinity of the company's tie camp, and had furnished the laborers engaged in that work with groceries and other supplies. The pay rolls for these laborers, as sent to the tie company from time to time, showed the names of each laborer, the amount he had earned, and the value of the supplies he had received from Harrison. The company was accustomed to deduct from the amount coming to the laborers the sums due Harrison, thereupon sending Harrison a check for the aggregate amount of the supplies which he had furnished the laborers, with the balance of the wages going to such laborers. On the date when the petition was filed Harrison owed the tie company a large amount and the company held some two thousand dollars which was due him for supplies he had furnished the laborers, and which they were under obligation to remit him in the manner above stated. It was sought to hold this amount as a set-off against his indebtedness to the company. This the Supreme Court held could not be done. The matter was disposed of in the following language:

"This leaves only for consideration the question whether the tie company was entitled to prove its claim, as it sought to do, for the balance owing, after

crediting as a set-off the 'deductions from pay rolls,' to which we have referred. Now, as we have seen, from the facts found, it must be that the agreement between Harrison and the tie company obligated the latter, when it made the deductions from pay rolls, to remit to Harrison the amount of such deductions irrespective of the account between itself and Harrison. It follows that as to such deductions the tie company stood towards Harrison in the relation of a trustee, and therefore the case was not one of mutual credits and debts within the meaning of the set-off clause of the bankrupt law. Libby v. Hopkins, 104 U. S. 303 [26 L. Ed. 769]."

[3] The parallelism between the present case and those cited is so evident that discussion would tend to obscure rather than to clarify. The property transferred to McLean and Alvord on December 4, 1909, was for a defined purpose. It was to be held by way of indemnity against a possible liability on a bond dissolving attachments upon which they were sureties. With the contingency that they might be liable, removed, as it was removed, the duty to return the property to the bankrupt or to his trustee arose, and this duty existed whether the property was held in its original form or whether, as was done apparently for purposes of economy, it had by Alvord and McLean been converted into cash. In either event it was trust property. It was in no sense a debt due from petitioner to Alvord. He at no time ever agreed to consider her his debtor for the amount. She was always his trustee. Her holding of the money was thus not in the same right as her holding of the claim against him. The latter was personal; the former fiduciary. These were thus not "mutual credits" within section .68a and the right of set-off did not exist.

Some complaint is also made by petitioner because the court did not permit petitioner's dividends coming to her on her claim to be deducted from the amount held by her before requiring the payment of the latter to the trustee. Page v. Rogers, 211 U. S. 575, 29 Sup. Ct. 159, 53 L. Ed. 332, is cited to the effect that such a course would prevent "useless circuity." But no such request was made of the trial court. The matter there submitted and determined seems to have been purely as to whether the set-off should be allowed, and the court's decision was simply a denial of that. Presumably the court will yet, upon the proper application, follow the practice prescribed in Page v. Rogers. This decision, which is upon an entirely different matter, is without prejudice to that.

The order of the District Court denying the right of set-off is approved and confirmed, and the petition to revise is dismissed.