In the Matter of the Application of JOB E. HEDGES, as Receiver of the NEW YORK RAILWAYS COMPANY, Appellant, for a Writ of Mandamus ·against CHARLES L. CRAIG, as Comptroller of the City of New York, Respondent.

First Department, December 3, 1920.

**Taxation — mandamus to compel comptroller of city of New York to audit and allow amount of excess special franchise taxes found on certiorari proceedings to have been paid by petitioner — Tax Law, section 296, construed and applied — right to set off claim of city against petitioner.**

By section 296 of the Tax Law, following a proper review through certiorari proceedings of special franchise assessments in the city of New York and the granting of final orders correcting the same and directing a refund of excess taxes paid, a complete and exclusive method is provided for obtaining a refund of taxes paid upon an illegal, erroneous or unequal assessment, and a peremptory writ of mandamus may be granted to compel the comptroller of said city to perform his ministerial duty and audit and allow the excess taxes.

No counterclaim or setoff may be interposed in the mandamus proceeding.

APPEAL by the petitioner, Job E. Hedges, as receiver, etc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 23d day of June, 1920, denying his motion for a peremptory writ of mandamus.

*Henry J. Smith* of counsel [*Winthrop & Stimson*, attorneys], for the appellant.

*William H. King* of counsel [*Eugene Fay* with him on the brief]; *John P. O'Brien, Corporation Counsel*, for the respondent.

MERRELL, J.:

This appeal is from an order denying the motion of the petitioner for a peremptory writ of mandamus directed to the comptroller of the city of New York commanding him to audit and allow to the petitioner certain excess taxes paid upon an erroneous special franchise assessment of the New York Railways Company for the years 1912 and 1913, together with interest from the date of payment.

The petitioner, Job E. Hedges, is the receiver of the New

York Railways Company. Said company, in the years 1912 and 1913, was assessed and paid special franchise taxes. After the payment of the same, the said company, feeling aggrieved by the assessments for those years, obtained writs of certiorari to review the same. In the proceedings thus instituted, final orders were made and entered on December 29, 1917, reducing the assessment of said special franchises, in the year 1912 from $13,363,300 to the sum of $10,033,412, and for the year 1913, from $13,650,000 to $11,528,758. By reason of such reduction it appears that the New York Railways Company paid for the year 1912 special franchise taxes amounting to $60,936.95 in excess of the amount it should have paid had the assessment been as determined by the court in the certiorari proceeding affecting the assessment for that year, and in the year 1913 the said company paid special franchise taxes to the amount of $38,394.48 in excess of what it would have paid had the assessment been made as finally determined by the court.

The respondent does not question the amounts of such reductions nor the amounts of excess taxes paid for said years, respectively. The final orders of the court in the certiorari proceedings directed the correction of the assessment rolls, and that there should be audited and allowed to the relator the amounts thus paid by the New York Railways Company in excess of what the tax would have been had the assessment been made as determined by said final orders.

On January 13, 1920, certified copies of the final orders in the certiorari proceedings were served upon the comptroller of the city of New York. The comptroller, upon advice of the corporation counsel of said city, declined to audit or refund to the petitioner said excess taxes paid for said years, claiming that the respondent might counterclaim and set off against the amounts of said excess taxes, a refund of which was asked, certain claims of the city of New York on account of paving in the railroad area of the New York Railways Company, which company was legally chargeable with the cost of such paving, and the expense of which had, in the first instance, been borne by the city of New York. Said claims for paving had accrued between December 3, 1914, and January, 1920, and amounted, in the aggregate, to $128,574.61.

Judgments amounting to $3,608.23 were procured by the city of New York against said New York Railways Company covering a part of its claims against said railways company for such paving.

The learned justice at Special Term denied the application for a peremptory mandamus upon the ground, as stated in the opinion of the court, that the respondent might set off and counterclaim against the petitioner's claim for a refund of said excess taxes the city's claim against the petitioner for the expense of said paving. · It seems to me that the court was in error in thus disposing of petitioner's application. Under the existing statutes, the petitioner's right to a refund of the excess taxes is absolute. The Tax Law provides for the assessment and collection of special franchise taxes, and, by section 46, provides a full and complete method for reviewing and correcting erroneous assessments. Said section 46 (as amd. by Laws of 1911, chap. 804) provides as follows: "An assessment of a special franchise by the State Board of Tax Commissioners [now Tax Commission] may be reviewed in the manner prescribed by article thirteen of this chapter." (See, also, Laws of 1916, chap. 334, and Laws of 1918, chap. 278, amdg. said § 46.)

Article 13 provides the procedure for reviewing an erroneous assessment, providing a comprehensive and exclusive method for testing the equality and correctness of such an assessment. The procedure thus provided is that any person assessed upon an assessment roll claiming to be aggrieved by an assessment for property therein, may present to the Supreme Court a petition duly verified, setting forth that the assessment is illegal, specifying the grounds of the alleged illegality, or, if erroneous by reason of overvaluation, stating the extent of such overvaluation, or, if unequal in that the assessment has been made at a higher proportionate valuation than the assessment of other property on the same roll by the same officers, specifying the instances in which such inequality exists, and the extent thereof, and stating that he is or will be injured thereby. Upon the presentation of such petition the court or a justice thereof may allow a writ of certiorari directed to the officers making the assessment to review the same. Upon the return of the writ, if it shall appear to the court that the

assessment complained of is illegal or erroneous or unequal, the court may order such assessment, if illegal, to be stricken from the roll, or if erroneous or unequal, it may order a reassessment of the property of the petitioner or the correction of the assessment upon the roll in accordance with law and in conformity with the valuations and assessments of other property on the same roll, and in such manner as shall secure equality of assessment. The court is permitted to take evidence upon the hearing. (See Tax Law, §§ 290–293. Amd. by Laws of 1909, chap. 330; Laws of 1911, chap. 302; Laws of 1916, chap. 323, and Laws of 1920, chap. 643. See, also, Tax Law, § 293a, as added by Laws of 1916, chap. 323.) Section 46 of the Tax Law further provides: "An adjudication made in the proceeding instituted by such writ of certiorari shall be binding upon the local assessors and any ministerial officer who performs any duty in the collection of the taxes levied upon said assessment in the same manner as though said local assessors or officers had been parties to the proceeding."

The final orders in the certiorari proceedings instituted by the petitioner to review the assessments against the special franchises of the New York Railways Company for the years 1912 and 1913 adjudicated that the assessments against the special franchises of the New York Railways Company for said years respectively were erroneous and excessive, and directed a reduction thereof as above stated. Each of said orders contained the following provision: " Ordered and directed that the officer or officers having custody of the assessment roll or the tax roll upon which the above-mentioned assessment and any taxes levied thereon have been entered shall forthwith correct the said entries in conformity to this order and shall note upon the margin of said roll opposite the said entries that the same have been corrected by the authority of this order."

Each of said orders also contained the following order and direction: " Ordered and directed that unless sooner paid there shall be audited and allowed to the relator and included in the tax levy of The City of New York, made next after the entry of this order, the amounts, if any, paid by said relator against the said erroneous assessment in excess of what the taxes would have been if the said assessment had been made

as determined by this order, together with interest thereon from the date of payment."

By the last quoted provision of the order entered in each proceeding it was ordered and directed that there be audited and allowed to the New York Railways Company the amount paid by it against said erroneous assessment in excess of what it would have been had the assessment been made in accordance with the determination of the order in the certiorari proceeding. The provisions of article 13 of the Tax Law thus provide a comprehensive and exclusive method for reviewing taxation and obtaining a refund of taxes paid in excess of the amount determined by the court to be payable under a proper and equitable assessment.

By section 296 of the Tax Law, following a proper review through certiorari proceedings of said assessments and the granting of a final order correcting the same and directing a ·refund of excess taxes paid, a complete and exclusive method is provided for obtaining a refund of taxes paid upon an illegal, erroneous or unequal assessment. Section 296 (as amd. by Laws of 1915, chap. 470, and Laws of 1916, chap. 323) provides as follows:

" § 296. Refund of tax paid upon illegal, erroneous or unequal assessment. If in a final order in any such proceeding it has been or shall be ordered or adjudged or determined that the assessment complained of was illegal, erroneous or unequal, and correcting or directing correction thereof, and such order shall not be made in time to enable the assessors or other officers to make a new or corrected assessment for the use of the board of supervisors or for the use of the town, village, city, school or special district officers levying any tax upon such property, the assessment of which has been or shall be so ordered or adjudged or determined to be illegal, erroneous or unequal, then any tax collected or to be collected upon such illegal, erroneous or unequal assessment shall be refunded as follows: * * *

" 2. When a tax, or any part thereof upon such illegal, erroneous or unequal assessment shall have been levied by the proper officers of any city or village, solely for the benefit and purposes of such city or village, then the common council or other auditing officer or officers of such city or village shall

immediately after such correction audit and allow, to the petitioner or other person who shall have paid such tax, or the part thereof levied solely for the benefit and purposes of such city or village, and include in the tax levy of such city or village in which the property is situated made next after the entry of such order and cause to be paid to such petitioner or other person paying such tax, or the part thereof levied solely for the benefit and purposes of such city or village, the amount paid by him in excess of what the tax or the part thereof levied solely for the benefit and purposes of such city or village, would have been if the assessment had been as ordered, adjudged or determined by such order of the court, together with interest thereon from the date of the payment."

The granting of the final orders in the certiorari proceedings concededly was in conformity with the requirements of the statute. Said orders adjudged that the assessment complained of as to each of said years was illegal, erroneous and unequal, and directed that the same be corrected as provided in said final orders. By subdivision 2 of section 296 the auditing officer or officers of a city are commanded to audit and allow to the petitioner or other person who shall have paid a tax upon an illegal, erroneous or unequal assessment the amount paid in excess of what the tax would have been had the assessment been made as ordered, adjudged and determined by the final order of the court, together with interest thereon from the date of payment. The statute thus charges the auditing officer, who, in the city of New York, is its comptroller, the respondent herein, with the performance of a ministerial duty. Failing therein, the petitioner had a clear right to apply to the court to mandamus said officer to perform his legal duty.

The final orders of the court in this case expressly commanded the auditing officer of the city of New York to audit and allow the refund of excess taxes paid by the petitioner. Refusing to comply with such order, the comptroller was clearly subject to mandamus to compel him to do so. This proceeding is not primarily to recover the excess taxes paid by the petitioner, but is merely to compel the performance by a ministerial officer of a plain duty which the statute provides he is to discharge. The final orders in the certiorari proceedings specifically adjudged the amount of the excess valuation

placed upon said special franchises for each of said years. While the amounts of the excess taxes paid by the petitioner for said years are not specified in the final orders in the certiorari proceedings, the amount of such excess taxes is readily determined by computation. The amount of the excess taxes as claimed by the petitioner is not questioned by the respondent, the respondent's only contention being that while the petitioner has a claim for a refund of said excess taxes, the respondent in behalf of the city of New York may offset against the same the claims of said city against the petitioner for paving in the railroad area. The respondent insists that in order to claim and obtain a refund of said excess taxes it is incumbent upon the petitioner to bring an action at law to recover the same. I find no suggestion in the Tax Law that such an action at law is necessary to obtain a refund of taxes. On the contrary, as above pointed out, the Tax Law lays down a plain and comprehensive method for obtaining a refund of said taxes. I know of no provision of law permitting the interposition of a counterclaim or setoff in a mandamus proceeding requiring a public officer to discharge a ministerial duty. The object of mandamus in the case at bar is to compel the comptroller to act. The statute provides the action which the comptroller is to take, and the court is asked in this proceeding merely to compel said official to act. (*People ex rel. Harris* v. *Commissioners*, 149 N. Y. 26, 30; *People ex rel. Pells* v. *Supervisors*, 65 id. 300.)

I think the petitioner was unjustly denied a peremptory writ of mandamus to compel the comptroller of the city of New York to perform his plain legal duty.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for a peremptory writ of mandamus granted, with fifty dollars costs, directing said comptroller to audit and allow the amount of excess taxes paid by the New York Railways Company for each of said years, in conformity to the provisions of the statute.

CLARKE, P. J., LAUGHLIN, DOWLING and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with fifty dollars costs.