**AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO. Appeal of EIGHTH AVE. RY. CO. Appeal of NINTH AVE. RY. CO.**

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

Nos. 220, 221.

1. Receivers ⬡165—Receiver of lessor, not party to creditors' bill, must bring plenary suit to recover funds of which he was not in possession, even though it be ancillary.

Where lessors of street railway were not parties to creditors' bill against lessee, receiver of lessee could not proceed summarily against lessor to recover funds alleged to be held in fiduciary capacity, and of which he was not in possession, but must bring plenary suit, even though it is ancillary.

2. Receivers ⬡165—Lessors of street railway, intervening in receivership proceeding against lessee, are parties for any controversy which may arise between them and receiver.

Where lessors of street railway intervened pro interesse in receivership proceeding against lessee, such intervention brought them as parties into cause for any controversy which might arise between them and receiver.

3. Judgment ⬡828(1).

Circuit Court of Appeals must accept rulings of state courts as to final order on certiorari.

4. Judgment ⬡743(3)—Petitions based on implied trust will lie to recover refund on franchise tax paid by lessee of street railway, and refunded to lessor after establishing title by mandamus.

Where mandamus established title at law of lessor of street railway to refund of franchise taxes paid by lessee, petitions by receiver of lessee, based on implied trust, will lie to recover such fund.

5. Trusts ⬡253.

Trustee of an implied trust may not set off a claim owing him by the beneficiary.

Appeals from the District Court of the United States for the Southern District of New York.

Creditors' bill by the American Brake Shoe & Foundry Company against the New York Railways Company, wherein Hugh J. Sheeran, as receiver for defendant company, filed petitions against the Eighth Avenue Railway Company and the Ninth Avenue Railway Company, demanding payment of certain sums held by them in a fiduciary capacity. The master's report in favor of the receiver was confirmed, and from orders directing payment, respondents appeal. Affirmed.

See, also, 293 F. 633; 5 F.(2d) 945.

The cases arise upon two petitions of the defendant's receiver against two railway companies, filed in a suit brought upon the usual creditors' bill. The respondents to the petitions had severally leased their street railroads to the defendant, which had covenanted to pay all taxes as part of the rental. As the defendant was much in default, both for rent and taxes, the lessors on April 22, 1919, a few months after the filing of the original bill and appointment of the receiver, severally filed petitions in the suit, asking leave to intervene and for a return of their roads. These petitions were denied, with leave to renew, and were renewed on June 17, 1919, except for the prayer to intervene. On April 15 and September 28, 1919, the roads were ordered returned to the lessors, and certain questions of accounting were reserved, relating, however, only to the operation by the receiver. Nevertheless the lessors were each made parties to the suit, and have continued so from that time forward.

In 1912 and 1913 the defendant, in performance of its covenants in the lease, had paid certain franchise taxes levied upon the franchises of the lessors to conduct street railways. The correctness of these taxes it challenged, and instituted certiorari suits in the New York courts, each in the name of one of the lessors. These resulted favorably, and orders were passed in each on December 20, 1917, reassessing the special franchises, and concluding as follows: "Unless sooner paid, there shall be audited and allowed to the relator [the lessor] and included in the tax levy * * * the amounts, if any, paid by said relator."

Thereupon several litigations arose between the defendant and the city of New York in an effort to recover the amounts so found due. Each took the form of a mandamus. The first, eventually successful, determined that the city might not set off against the overpayments other claims of the city against the defendant. The second, which was unsuccessful, sought to compel the city to recognize the defendant's claim to the overpayments as between itself and its lessors, who had by that time asserted their rights to the sums awarded. All these mandamuses were begun after January 1, 1920; that is, after the orders in the creditors' suit allowing the lessors to intervene.

The parties, having thus come to a deadlock, agreed December 8, 1922, that the lessors should receive and cash the checks awaiting them in the comptroller's office; that the status quo as of April 20, 1921, should remain (this being the date the comptroller announced his willingness to pay); and that

they should try to agree upon a statement of facts in the state courts, failing which either party might institute such proceedings as to it might seem proper. Being unable to agree upon the facts, the receiver began these proceedings by petitions in the main suit, demanding payment of the sums received from the comptroller as held in a fiduciary capacity.

The lessors objected to the jurisdiction of the court, because the petitions set up an adverse claim to property in their possession; further asserted that the controversy had been settled by the orders in the certiorari and mandamus suits; and finally, on the merits, insisted that they might apply the sums against the defendant's defaults upon its covenants. The District Court overruled the jurisdictional objection and sent the cases to a master, whose report in favor of the receiver it confirmed, and upon which it ordered the lessors to pay him the sums so received. The appeals were from these orders.

Michel Kirtland, of New York City (Kerner Easton, of New York City, on the brief), for appellants.

Cotton & Franklin, of New York City (Boykin Wright and J. A. Fowler, Jr., both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). Had the lessors stood outside the suit, we do not see how the court would have had summary jurisdiction. It could not have rested upon contempt, because the lessors got possession of the checks under the agreements of December, 1922, which expressly gave them that right, and prescribed that, notwithstanding, the parties should stand as of April 20, 1921, the date when the comptroller acknowledged liability. It was no contempt to assert a claim of title against the funds in the comptroller's hands, if one did nothing more. Again, we cannot see how the money was part of the estate, of which the receiver had either possession or title, if title is of any consequence. On April 20, 1921, the receiver had no possession, and, as his petitions now disclose, his only rights were those of an implied beneficiary.

[1, 2] In such a situation a receiver must bring a plenary suit, even if it may be ancillary; he may not proceed summarily. This is a well settled rule. Parker v. Browning, 8 Paige (N. Y.) 388, 35 Am. Dec. 717; Whea-

ton v. Daily Telegraph Co., 124 F. 61, 59 C. C. A. 427 (C. C. A. 2); Dold Packing Co. v. Doermann, 293 F. 315, 331 (C. C. A. 8); Horn v. Pere Marquette Ry. Co., 151 F. 626, 628 (C. C.). The same principle appears in the refusal of a court to grant a writ of assistance against one not a party to a bill of foreclosure. Terrell v. Allison, 21 Wall. 289, 22 L. Ed. 634; Thompson v. Smith, 1 Dill. 458, Fed. Cas. No. 13,977. However, it has always been laid down at the same time that if the third person, who is in possession of the res, is made a party to the suit, the receiver may proceed by intervening petition. Whether the plaintiff may, as the phrase runs, "extend the receivership" to him, is at times a difficult question. Here it is not. The lessors have chosen, for reasons satisfactory to themselves, to intervene pro interesse suo; that intervention was in no way limited, and it brought them as parties into the cause for any controversies which might arise between them and the receiver.

The next question is as to whether the merits are foreclosed by anything which occurred in the state courts. There were three proceedings in each case, the certiorari and the first and the second mandamus. The certiorari was begun in the name of the lessor, as relator, and while, in fact, promoted by the defendant, did not in any way affect to determine this controversy between it and the relator. It could not, because the pleadings did not raise such a question, nor did the evidence disclose that it existed. Indeed, it did not exist; the defendant not being in default on its covenants until long after the certioraris were commenced, and indeed not until after they were ended. If the defendant forfeited its rights to the award, it was not, therefore, by estoppel of record, but by using the name of the lessor as relator, when under subdivision 2 of section 296 of the New York Tax Law (Consol. Laws, c. 60) it might possibly have sued in its own name as the person paying the tax.

[3] The appellants' position in substance makes the choice of the lessor as relator a transfer of the defendant's rights, an interpretation which it plainly cannot bear. At the time the defendant was in full possession of the lessor's road, was not in default, and there existed no conceivable reason to suppose that its equity in the payment would not be freely recognized. It is not, therefore, necessary to challenge the propriety of the passage quoted above from the final order on certiorari. We must, indeed, accept the ruling of the state courts in Hedges v. Craig,

185 N. Y. S. 122, 194 App. Div. 786, affirmed 132 N. E. 868, 231 N. Y. 513, that it was properly inserted. Nor do we, of course, suggest that the full effect of those proceedings is open to review here.

[4] The first mandamus is so clearly irrelevant that it seems idle to do more than allude to it; it accomplished no more than to establish the receiver's right to such refunds as he had title to, without set-off by the city. The second mandamus established the lessor's title at law to the fund, but it did nothing more. It did, indeed, conclude the receiver from maintaining any rights at law against the fund, because it decided that as to the city the lessor was the sole obligee. Till then it was perhaps arguable—at least it was argued—that under subdivision 2 of section 296 the defendant and its receiver might establish a direct title as the person paying the tax.

That decision was therefore a step in this proceeding because, unless title is in the lessors, the petitions at bar will not lie, based, as they are, upon an implied trust. But it went no farther, and, instead of settling the relations of the parties in equity, ended as it did precisely for the reason that upon mandamus the court would not look behind the legal title of the relator on certiorari. How that can be supposed to have concluded this controversy we cannot understand. Indeed, the learned judge at Special Term gave as one reason for his decision that the obligor, the city, should not be drawn into this very dispute.

[5] Therefore the question is open on the merits whether the trustee of an implied trust may set off a claim owed him by the beneficiary. The opposite is well settled in bankruptcy. Libby v. Hopkins, 104 U. S. 303, 26 L. Ed. 769; Western Tie & Timber Co. v. Brown, 25 S. Ct. 339, 196 U. S. 502, 509, 510, 49 L. Ed. 571; Alvord v. Ryan, 212 F. 83, 128 C. C. A. 539 (C. C. A. 8); Morris v. Windsor Trust Co., 106 N. E. 753, 213 N. Y. 27, Ann. Cas. 1916C, 972. But these cases depend upon the phrase "mutual debts or mutual credits," of section 68a of the Bankruptcy Act (Comp. St. § 9652[a]). They do not necessarily control the procedure of a court of equity. The general rule is, however, equally well settled in equity. Cook County Nat. Bank v. U. S., 2 S. Ct. 561, 107 U. S. 445, 452, 27 L. Ed. 537; Freeman v. Loman, 9 Hare, 109; Dodd v. Winship, 133 Mass. 359; Abbott v. Foote, 15 N. E. 773, 146 Mass. 333, 4 Am. St. Rep. 314; Russell v. Pottsville, etc., Church, 65 Pa. 9; Tagg v.

Bowman, 99 Pa. 376; First National Bank v. Barnum, etc., Works, 24 N. W. 543, 58 Mich. 124, 55 Am. Rep. 660; Harris v. Elliott, 48 N. Y. S. 1020, 24 App. Div. 133.

It is quite true that it was not applied in Smith v. Perry, 95 S. W. 337, 197 Mo. 438, on the theory that insolvency raised a special equity. Courts of equity have certainly at times gone further in such matters than courts of law, but insolvency is not enough, when there is a fiduciary relation, as several of the cases just cited show. As Vice Chancellor Turner said in Freeman v. Loman, supra, there must be something from which one may gather that the parties have assented to the set-off. None of the cases cited by the appellants reach this situation at all.

Decrees affirmed.