74 F.3d 287
 Fed. Sec. L. Rep. P 99,020
SECURITIES AND EXCHANGE COMMISSION, Appellee,
v.
VISION COMMUNICATIONS, INC., et al.,
(By Fred F. Fielding as Receiver for Vision Communications,
Inc., and Wilkes-Barre-Scranton, L.C.), Appellees,
Vista Vision, Inc., Appellant.
 Nos. 94-5262, 95-5089.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 28, 1995.
Decided Jan. 26, 1996.
Rehearing Denied Feb. 23, 1996.
 
 Deborah H. Bornstein, Chicago, IL, argued the cause for appellant. With her on the briefs was Thomas J. Dougherty, Jr. Rodney H. Glover, Washington, DC, entered an appearance for appellant.
 James H. Wallace, Jr., Washington, DC, argued the cause for appellees Receiver for Vision Communications, Inc., and Wilkes-Barre-Scranton, L.C. With him on the brief was Fred F. Fielding.
 Eric Summergrad, Principal Assistant General Counsel, Washington, DC, argued the cause for appellee Securities and Exchange Commission. With him on the brief were Simon M. Lorne, General Counsel, Leslie E. Smith, Senior Litigation Counsel, and Susan K. Straus, Attorney. Jacob H. Stillman, Associate General Counsel, entered an appearance.
 Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.
 Opinion for the court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 We have before us the remnants of a civil enforcement action brought by the Securities and Exchange Commission in the United States District Court for the District of Columbia. The SEC's complaint, filed in March 1994, alleged that a Texas company and a California company and two individuals from California had illegally solicited investments in a scheme to build a "wireless cable" communications system in the Wilkes-Barre/Scranton area of Pennsylvania. Without admitting or denying the allegations, the defendants consented to a decree enjoining them from violating the securities laws, directing the two individuals to disgorge $550,000, and appointing a receiver to liquidate the assets of the companies.
 
 
 2
 Odd though it might seem, part of this oxymoronic "wireless cable" scheme turned out to be a fairly good investment. Several months before the SEC brought its suit, the California corporate defendant--Vision Communications, Inc. ("VCI")--signed an installment contract to purchase equipment and what we shall call "transmission rights" from Vista Vision, Inc., a Pennsylvania corporation not otherwise involved in the SEC action. Since then, the value of the transmission rights has greatly appreciated. Today the rights are worth substantially more than the total of the installment payments VCI was to make under the contract. Naturally, the court-appointed receiver is anxious to make the remaining installment payments so that he can acquire the transmission rights, sell them at a profit, and distribute the proceeds to the investors in the aborted scheme, as the consent decree contemplates. Not surprisingly, Vista Vision would like to find a way out of its contract with VCI so that it can resell the transmission rights, this time at a much higher price. To that end, Vista Vision has contended that VCI defaulted on the contract, thereby terminating it.
 
 
 3
 In order to preserve his claim to the rights under the contract, the receiver endeavored to make VCI's payments to Vista Vision while he tried to negotiate a settlement. On June 13, 1994, with negotiations at an impasse, Vista Vision's counsel sent a letter to the receiver, stating, "I think it is in everyone's best interest to take this matter to [the district judge] for a decision on the simple contract issue.... Therefore, we would request that you contact the judge's law clerk to get the next available hearing date which would permit us to brief the issue."
 
 
 4
 At the receiver's request, the court held the hearing in June 1994. Several days later the court issued an order authorizing the receiver "to assert jurisdiction over VCI's assets" and enjoining Vista Vision "from interfering with the Receiver's sale or transfer" of the assets. SEC v. Vision Communications, Inc., No. 94-0615(CRR), 1994 WL 855061, at * 5 (D.D.C. June 28, 1994). Vista Vision's appeal is partly on the ground that because the district court lacked personal jurisdiction over the company and lacked in rem jurisdiction over the property, the court was powerless to enter the injunction.
 
 
 5
 Vista Vision had argued these points in its opposition to the receiver's motion for a declaration of VCI's property rights and for an injunction. The opposition stated that Vista Vision was appearing "specially," a qualification its counsel repeated at the hearing. The receiver nevertheless insists that Vista Vision, through its letter of June 13, 1994, consented to the district court's exercise of jurisdiction. The district court did not credit this argument and neither do we. It is of course possible to waive, in advance of any judicial proceedings, an objection to a court's in personam jurisdiction, as when parties agree by contract to submit their disputes to a particular court. See National Equip. Rental Ltd. v. Szukhent, 375 U.S. 311, 315-16, 84 S.Ct. 411, 414-15, 11 L.Ed.2d 354 (1964); Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 102 S.Ct. 2099, 2104-05, 72 L.Ed.2d 492 (1982). But that is far from what happened here. Rather than a contractual commitment, Vista Vision's letter was sent in the midst of settlement negotiations. Cf. FED.R.EVID. 408. The letter followed earlier correspondence in which Vista Vision's counsel objected to the receiver's exercising authority over the contract rights. A party may exclaim, during the heat of negotiations, "So sue me!" That is no more a consent to a court's personal jurisdiction if an action is brought than was the statement in the company's letter of June 13. The letter did not address the subject of jurisdiction, and any doubt about Vista Vision's position vanished prior to the hearing--and during it--when the company vigorously contested the court's power to adjudicate the receiver's motion and to issue the injunction.
 
 
 6
 If the district court had such power, it therefore must have derived it from something other than Vista Vision's acquiescence. In the memorandum opinion accompanying its order, the district court apparently concluded that its in personam jurisdiction over Vista Vision flowed either from its in rem jurisdiction over the transmission rights or from its initial jurisdiction over the underlying SEC enforcement action. We find neither source adequate.
 
 
 7
 In nondiversity cases, the requirement that a court have personal jurisdiction stems from the Due Process Clause. Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). It may be, therefore, that the familiar "minimum contacts" doctrine, see Insurance Corp. of Ireland, Ltd., 456 U.S. at 703 n. 10, 102 S.Ct. at 2105 n. 10, is measured in terms of a defendant's contacts with the United States rather than with the particular forum state. See Omni Capital, 484 U.S. at 102 n. 5, 108 S.Ct. at 409 n. 5; 4 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE Sec. 1067.1, at 82 (2d ed. Supp.1995). But even if we assume, arguendo, this to be so, there still must be some basis for Vista Vision's "amenability to service of summons." Omni Capital, 484 U.S. at 104, 108 S.Ct. at 409. Absent Vista Vision's consent--which it did not give--this means that there must be "authorization for service of summons" on Vista Vision. See id.
 
 
 8
 Vista Vision was never a party in the SEC enforcement action. Both it and the transmission rights at issue in this case are located in Pennsylvania. Thus, to establish personal jurisdiction over Vista Vision, the receiver would have needed "authorization" to have Vista Vision served in Pennsylvania, indisputably outside the territorial boundaries of the U.S. District Court for the District of Columbia. The interplay between Rule 4(k)(1)(D) of the Federal Rules of Civil Procedure and 28 U.S.C. Sec. 1692 could have provided that authorization. Under Rule 4(k)(1)(D), the service of a summons may establish personal jurisdiction "when authorized by a statute of the United States." FED.R.CIV.P. 4(k)(1)(D). Section 1692 provides:
 
 
 9
 In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts.
 
 
 10
 But to invoke Sec. 1692, a receiver first must comply with 28 U.S.C. Sec. 754. See Haile v. Henderson Nat'l Bank, 657 F.2d 816, 823 (6th Cir.1981), cert. denied, 455 U.S. 949 (1982); 7 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE p 66.08, at 66-51 (2d ed. 1995). Under Sec. 754, which is quoted in the margin,[1] a receiver appointed in one district may obtain jurisdiction over property located in another district by filing in the district court of that district, within ten days after the entry of his order of appointment, a copy of the complaint and his order of appointment. The receiver in this case filed the required documents in Pennsylvania, but not until July 5, 1994--almost two months after the court appointed him and one week after the court issued its injunction. In light of the following language in Sec. 754, this was fatal: "The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district." 28 U.S.C. Sec. 754. As the parties here understand, the court's jurisdiction to reach Vista Vision and the Pennsylvania property had to be through the court's agent, the receiver. Haile, 657 F.2d at 823, explains that a receiver's compliance with Sec. 754 in a particular district extends the territorial jurisdiction of the appointing court into that district. By not complying with Sec. 754, the receiver failed to establish control over the property. His failure precluded the district court from using Sec. 754 as a stepping stone on its way to exercising in personam jurisdiction over Vista Vision. See American Freedom Train Found. v. Spurney, 747 F.2d 1069, 1073-74 (1st Cir.1984).
 
 
 11
 At the June 1994 hearing, the receiver argued--and the district court agreed--that the language of Sec. 754 is not as rigid as it appears. The argument is repeated on appeal. Yet no matter what one may say about Sec. 754's rigidity, no other court of appeals has ever stretched Sec. 754 as far as this receiver needs it to go, and we will not be the first. The receiver cites three cases in which appellate courts allowed a receiver to obtain jurisdiction despite his failure to comply with Sec. 754. In two of the cases, SEC v. Equity Service Corp., 632 F.2d 1092 (3d Cir.1980), and Kilsheimer v. Rose & Moskowitz, 257 F.2d 242 (2d Cir.1958), the courts forgave tardy compliance with Sec. 754 when compelling reasons were offered for the delays--the death of a receiver in one case, impossibility in the other--and when the receivers nonetheless did comply with Sec. 754 months before the actions there arose. In the third case, United States v. Arizona Fuels Corp., 739 F.2d 455, 460 (9th Cir.1984), the court held that the receiver's failure to satisfy Sec. 754 did not "preemptively" divest the district court of the in personam jurisdiction it already had over the party claiming an interest in the property. Compliance with Sec. 754, the court held, is necessary "[w]hen there is no other basis of jurisdiction," id.
 
 
 12
 In all three cases, then, the district courts had personal jurisdiction over the parties--either through belated compliance with Sec. 754 or otherwise--before hearing the cases. In this case, the district court had no source of personal jurisdiction outside Sec. 754, cf. Omni Capital, 484 U.S. at 104, 108 S.Ct. at 409, and the receiver had not complied with Sec. 754 at the time the district court entered its injunction. While the receiver finally filed the documents required by Sec. 754 a week after the district court issued its order, that late filing cannot establish jurisdiction retroactively. At the time the district court entered its order authorizing the receiver to "assert jurisdiction over VCI's assets" and enjoining Vista Vision "from interfering with the Receiver's sale or transfer" of the assets, Sec. 754 had already divested the receiver of jurisdiction and the district court could not supersede that statutory preclusion.
 
 
 13
 Of course, a receiver's failure to comply with Sec. 754 cannot deprive a court of personal jurisdiction it already has. See Arizona Fuels Corp., 739 F.2d at 460. The district court apparently concluded--and the SEC and the receiver argue on appeal--that the court had jurisdiction over Vista Vision entirely independent of Sec. 754. We disagree for two reasons. First, while a district court has broad power to issue ancillary relief in SEC actions and receiverships, that power exists precisely because the court has taken control over the property placed in receivership. See SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir.1990). In an ancillary action by the receiver, such as the one before us, the district court's jurisdiction then extends to any district in which receivership property may be found "provided that the proper documents have been filed as required by Sec. 754." 7 MOORE'S FEDERAL PRACTICE, supra, p 66.08, at 66-52. By not filing the Sec. 754 papers in time, the receiver here deprived the court of that power.
 
 
 14
 Second, while the All Writs Act, 28 U.S.C. Sec. 1651(a), empowers a district court to issue injunctions to protect its jurisdiction, the injunction in this case protects jurisdiction the district court did not have. Had the receiver complied with Sec. 754 and taken control of VCI's contract rights in Pennsylvania, the court might then have been able to enjoin non-parties such as Vista Vision from interfering with the court's receiver's control. "[B]ut this exercise of the authority of the court to protect its own possession is not to be confounded with the exercise of jurisdiction over persons claiming adverse rights in property which has never been in the custody of the court." Wheaton v. Daily Telegraph Co., 124 F. 61 (2d Cir.1903). Because the receiver failed to comply with Sec. 754, the Pennsylvania property was never under the control of the receiver and was therefore not the court's to protect. Rather, the transmission rights remained with Vista Vision, which was neither an original party nor an intervenor in the SEC enforcement action before the court. See American Brake Shoe & Foundry Co. v. New York Railways Co., 10 F.2d 920, 921 (2d Cir.1926) (L. Hand, J.). Because the transmission rights were not brought within the court's jurisdiction, the court could not have been protecting its jurisdiction when it enjoined Vista Vision from interfering with the receiver's sale of them.
 
 
 15
 That is not to say that the district court remains powerless to protect the investors. On remand, the court may reappoint the receiver and start the ten-day clock of Sec. 754 ticking once again. Presumably, the receiver will take advantage of his second chance to comply with Sec. 754 and promptly file the necessary papers in Pennsylvania. Once he does so, the receiver will have jurisdiction over the Pennsylvania property and may seek to have Vista Vision served in Pennsylvania under 28 U.S.C. Sec. 1692.
 
 
 16
 * * * * * *
 
 
 17
 The case is hereby remanded to the district court. However, our judgment vacating the district court's decree is stayed until ten days after the issuance of the mandate in this case.
 
 
 
 [1]
 28 U.S.C. Sec. 754 provides:
 A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of such property with the right to take possession thereof.
 He shall have capacity to sue in any district without ancillary appointment, and may be sued with respect thereto as provided in section 959 of this title.
 Such receiver shall, within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located. The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district.