---

In re LYON.

(District Court, S. D. New York. February 7, 1902.)

BANKRUPTCY—PREFERENCES—SURRENDER.

    A bankrupt on January 2d gave a check to a creditor on the A. Bank, dated January 20th, and became insolvent on the latter date. On that day the creditor deposited the check with the N. Bank, which on the following day received the money through the clearing house, and the amount was charged by the A. Bank against the bankrupt's account. *Held*, that the creditor had received a preference, though the payment was made to him through the medium of the N. Bank, and not directly, and that it would have to be surrendered before he could prove other claims.

In Bankruptcy. On appeal from order of referee expunging claim. The following is the opinion of WISE, Referee:

The verified schedules of the bankrupt disclose the fact that the indebtedness of the company amounts to $16,239.82, and the assets of the company, according to said schedules, amount to $4,174.27. The claims proved before the referee amount to $14,893.81. It is also conceded that the sale of the bulk of the assets, consisting of the stock in trade of the bankrupt company, was had on January 20, 1900. In the opinion of the honorable district judge, made January 4, 1901, he found as a fact as follows: "By its sale to the Lyon Umbrella Company, the Amasa Lyon Company transferred all its tangible property and ended its business. All it did thereafter was to collect in some outstanding accounts, and make payment to various creditors. It was insolvent." The finding of fact of the insolvency of the bankrupt corporation is an adjudication of fact in this case, which has not been reversed, and therefore stands as binding upon all parties. It certainly binds with particular force the creditors George Batten & Co., who took part in and secured the adjudication of the bankrupt by the establishment of this very fact. When the bankrupt devested itself of what the learned district judge found was all its tangible property, it did not remain possessed of property which, at a fair valuation, was sufficient in amount to pay its debts; and as this took place on January 20, 1900, it is very evident that the insolvency of the bankrupt must be established as of that date. It may possibly be that the company was really insolvent prior to January 20, 1900, but the burden of proving this fact was upon the trustee, and as no satisfactory value of assets transferred on January 20, 1900, by the company, was established, it would not be just or right to assume as a fact that which was not properly established by sufficient evidence; hence from the evidence, as well as from

the previous finding of the honorable district judge, January 20, 1900, must be fixed as the date whereon the bankrupt became insolvent.

The fact that on January 2d the bankrupt delivered to the firm of George Batten & Co. a number of postdated checks, the last one bearing date January 20, 1900, for $210.15, did not, under the authorities, operate as a payment on January 2, 1900. A postdated check becomes, in effect, a note, and in many of the states would be entitled to days of grace, the same as a note (1 Edw. Bills & N. [3d Ed.] 396); and therefore the decision in Re Abraham Steers Lumber Co., 6 Am. Bankr. R. 315, 110 Fed. 738, and affirmed by the circuit court of appeals (7 Am. Bankr. R. 332, 112 Fed. 406), to the effect that the giving of a note does not constitute a payment at the time it was delivered, negatives the proposition that such payment was made on January 2, 1900, at the time the said postdated check was delivered to the creditor. Had the check never been paid, no preference would have been received by the creditor. A creditor receives a preference when there is actually transferred to him, either in money or in other value, part of the debtor's property. The transfer herein to the creditor took place either on January 20, 1900, or thereafter; and as such transfer took place on or after the day the bankrupt became insolvent, and as the law does not consider fractions of a day, the result naturally follows that, under the authorities, the said firm of George Batten & Co. did, on January 20, 1900, while the bankrupt was insolvent, receive a preference to the extent of $210.15, and which preference must be surrendered before the said creditors can participate in a distribution of the estate of the bankrupt. The evidence and record show that the postdated check payable on January 20, 1900, amounting to $210.15, was part of a running account for advertising furnished by the said creditors to the bankrupt company, and the proof of debt filed herein by the creditors in the sum of $546.62 is for advertising furnished subsequently; so that we have before us all the elements of a continuous business transaction and a running account, and no alternative is therefore left, under the decision of the United States supreme court in Pirie v. Trust Co., 21 Sup. Ct. 906, 45 L. Ed. 1171, but to require a surrender of the said sum of $210.15 as a prerequisite to allow the creditor's claim to stand against the bankrupt estate.

The order of the referee expunging the claims was affirmed February 26, 1902.

Kneeland, LaFetra & Glaze, for petitioner.

Perry D. Trafford, for the trustee.

ADAMS, District Judge. It appears that the bankrupt became insolvent January 20, 1900. On the 2d of January, 1900, it delivered to the petitioner a check on the Astor Place Bank, dated January 20, 1900, for $215. On that day the petitioner deposited the check with the National Shoe & Leather Bank. On the following day the latter received the money in the ordinary course of business through the clearing house, and the amount was charged by the Astor Place Bank against the account of the bankrupt.

The claim is that when the deposit was made the Shoe & Leather Bank became the absolute owner of the check, and the preference was to it, and not to the petitioner. I am unable to coincide with such view. The effect of the delivery of the check to the petitioner was to diminish the assets of the bankrupt, when insolvent, to the detriment of its other creditors. The money was within the control of the bankrupt up to the 21st of January, 1900, and if it had been drawn from the bank before the check was presented there would have been no payment, and the petitioner would have occupied the same position as other unpreferred creditors. There was therefore a payment when

insolvent, and it was a payment directly for the benefit of the petitioner, through the medium of its bank. I do not see any merit in the other suggestions.

The order of the referee expunging the claim is affirmed.