Lawson F. BERNSTEIN, Trustee in Bankruptcy of Frigitemp Corporation, Plaintiff,

v.

IDT CORPORATION, George Davis, General Dynamics Corporation, Panagiotis Takis Veliotis, James H. Gilliland, Paulette Veliotis, Elizabeth Gilliland, Leonora L. Cable, a/k/a Leonora Davis, Mark J. Deroche and John Doe Defendants whose identities are currently unknown to Plaintiff, Defendants.

84 Civ. 5299 (EW).

United States District Court, S.D. New York.

July 16, 1987.

---

See also, D.C., 638 F.Supp. 916.

Berger & Montague, Philadelphia, Pa., for Lawson F. Bernstein; David Berger, H. Laddie Montague, Jr., Martin I. Twersky, of counsel.

Hollman & Byrne, New York City, for IDT Corp. and George Davis; Matthew L. Byrne, of counsel.

Jenner & Block, Chicago, Ill., for Gen. Dynamics Corp.; Albert E. Jenner, Jr., Nicholas D. Chabraia, William P. Suriano, Susan B. Cohen, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Lawson F. Bernstein, trustee in bankruptcy of Frigitemp Corporation (the Trustee), brought this action against IDT Corporation (IDT), and its president, George Davis (Davis), as well as General Dynamics Corporation (GD), some of GD's officers, and other individuals not parties to this motion. The Trustee now moves to dismiss the counterclaims of those defendants.

The complaint alleges that Frigitemp, a corporation in the business of subcontracting on marine construction of naval and merchant vessels (commonly known as "joiner work"), filed a Chapter XI Bankruptcy Petition on March 20, 1978, and continued to operate its business until May 29, 1979 when it was adjudicated a bankrupt. The plaintiff was appointed Trustee on that date and has been serving as Trustee ever since. Defendant Davis had been a senior vice president of Frigitemp's marine division, who in February 1978 created IDT Corporation, of which he has been president and a member of its board of directors since at least 1978. Defendant GD is engaged in the shipbuilding business through its Quincy, Massachusetts shipbuilding division.

The complaint alleges that in late 1977 or early 1978, co-defendant P. Takis Veliotis, Executive Vice President of GD's Marine and International Operations, along with co-defendant James H. Gilliland, a GD officer, conspired with Davis and co-defendant Gerald E. Lee, Frigitemp's chief executive officer, to form IDT for the purpose of obtaining by fraudulent conveyance subcontracts and other Frigitemp property and assets, to make illicit payments to Veliotis and Gilliland, and to perpetuate the violations and pattern of racketeering activity described in the complaint. The complaint further alleges that from 1973, defendants engaged in a scheme to embezzle and fraudulently divert money from Frigitemp by paying kickbacks to Veliotis and Gilliland, and to conceal their illegal activities from the Trustee and the Bankruptcy Court. It is further alleged that as part of this scheme, defendants allegedly obtained, through perjured testimony, a settlement and release from the Trustee.

On July 16 and September 8 and 9, 1980, Davis and IDT (through Davis) submitted to oral deposition in the Frigitemp bankruptcy proceedings, when Davis denied knowledge of any fraudulent scheme or conspiracy to make payments. Veliotis was deposed on February 28, 1980, and denied that Davis had ever illegally transferred money to him, or that he conducted any banking transactions at Grand Cayman Island. According to the complaint, these statements were false in that hundreds of thousands of dollars were transferred to Veliotis's Swiss bank account located at Cayman Island by Davis and other employees of Frigitemp. Similar allegations are made as to defendant Gilliland. In total, $1,125,000 was allegedly transferred to Veliotis's Swiss bank accounts, and $925,000 into Gilliland's. It is further alleged that at the time of their perjured testimony, both Veliotis and Gilliland were acting on behalf of GD, and that GD knew or should have known that the testimony was perjured.

In April 1981, the parties entered into a settlement and release agreement whereby defendants were released from any claims by the Trustee, and assignments were executed whereby others now alleged to be co-conspirators assigned to Davis and IDT their rights to claims against Frigitemp. As part of the agreement, Davis and IDT paid Frigitemp $1,369,620 in consideration for certain Frigitemp purchase orders it had obtained prior to the filing of the petition; $30,000 in consideration for certain Frigitemp patents it had obtained prior to the filing of the petition; $100 in settlement of all claims Frigitemp may have against IDT and Davis; and $280 in consideration for the Trustee's assignment to IDT of any claims the Trustee may have against the assignees listed in the agreement. The total amount paid by IDT and Davis was $1,400,000.

The Trustee alleges that the settlement agreement executed by him was fraudulent, obtained in reliance upon the false and perjurious statements made during the depositions and as part of the illegal scheme,

conspiracy and pattern of racketeering activity charged in the complaint. After the release and assignments were executed, the Trustee learned that, as a condition of many of the contracts between GD and Frigitemp, the individual defendants agreed that Davis and Lee would embezzle and divert Frigitemp funds equal to at least ten percent of the contract price, and transfer that money to Veliotis and Gilliland. In total, at least $4,500,000 was illegally transferred to Veliotis and Gilliland. The transfer of funds was accomplished by the submission of false invoices issued by certain colluding entities, which Frigitemp paid. Davis is alleged to have shared in substantial portions of these payments. As a result of the illegal scheme, Frigitemp was forced to file for bankruptcy protection on March 20, 1978. GD then terminated its contracts with Frigitemp and reawarded them to IDT. The Trustee alleges that Frigitemp was injured by this scheme in that its valuable contracts were transferred to IDT for no or inadequate consideration; the Trustee was delayed in pursuing enforcement of his rights due to the perjured testimony, thereby allowing assets to be concealed, dissipated or removed from the jurisdiction of the United States, and further allowing individual defendants to leave the country.

In addition to a claim asserted under the Racketeer Influenced and Corrupt Organizations Act (RICO),[1] the Trustee also alleges common law fraud in the inducement of the settlement agreement. Defendant GD is further charged with negligence in entrusting Veliotis and Gilliland with positions of responsibility, and in failing to either discover the scheme or bring it to an end.

In their answer, Davis and IDT categorically deny the charges of wrongful conduct against them, and allege a counterclaim against the Trustee that the Trustee had violated the terms of the settlement agreement by commencing this action, failing to preserve, as the agreement provided, the confidentiality of the information obtained in reaching the settlement, and failing to

---

1. 18 U.S.C. §§ 1961–1968.

employ the dispute resolution procedure set forth in the settlement agreement. As a result, Davis and IDT demand return of the $1,400,000 paid upon the execution and delivery of the release and settlement agreement.

GD likewise asserted counterclaims against the Trustee, including claims for civil RICO violations, common law fraud, inducement to breach fiduciary duties, and breach of contract. GD also seeks equitable relief to recover the overcharges allegedly billed to and paid by GD. We consider the counterclaims of the two sets of defendants separately.

## DISCUSSION

### A. *Counterclaims of Davis and IDT*

■ In support of its motion to dismiss the counterclaims asserted by Davis and IDT, the Trustee argues that the claims are neither "provable" under § 63(a)[2] nor "allowable" under § 57(g)[3] of the Bankruptcy Act of 1898 (the Act), which controls this case.[4] Therefore, § 68(b)[5] of the Act bars the assertion of the claims.

Under § 68(b), a party sued in a plenary action brought by a trustee in bankruptcy may not assert counterclaims in that plenary action unless those counterclaims are both "provable" and "allowable" within the meaning of the Act.[6] A provable claim is one existing on the date the bankruptcy petition is filed, because it is the filing of the petition which fixes the date upon which creditors may share in the estate.[7] Under § 57(g) of the Act, a claim is allowable only if the creditor surrenders to the Trustee any void or voidable preferences, liens, conveyances, transfers or assignments it may have obtained from the estate.

■ The counterclaim advanced by Davis and IDT arises out of the settlement agreement entered into between the parties more than three years after Frigitemp filed its petition. The counterclaim is therefore not provable, and not assertable as a set-off or counterclaim.

■ Neither is the claim "allowable" as the term is defined in § 57(g) of the Act. Davis and IDT do not dispute that they acquired preferences prior to the filing of the petition in the form of purchase orders and patents, but contend that they offered to surrender the property. However, their offer was contingent upon Frigitemp's repayment of the $1,400,000 paid to Frigitemp, the very relief Davis and IDT seek by assertion of their counterclaim. Under § 57(g), the surrender must be unconditional.[8]

The counterclaim asserted by Davis and IDT is neither provable nor allowable. The Trustee's motion to dismiss the counterclaim is therefore granted.

### B. *Counterclaims of General Dynamics*

We next consider the Trustee's motion directed to the GD counterclaims. The Trustee asserts that the RICO, common law fraud, and inducement to breach fiduciary duty claims sound in tort and therefore are not provable, that the claims cannot be asserted because they are stayed by the automatic stay imposed by the Bankruptcy Court, and that the claims are barred because GD failed to file a proof of claim in Bankruptcy Court.

As outlined above, GD has asserted counterclaims under the civil provisions of the

---

2. Ch. 541, 30 Stat. 544, 562 (1898) (as amended and codified at 11 U.S.C. § 103(a) (1976)).

3. Ch. 541, 30 Stat. 544, 560 (1898) (as amended and codified at 11 U.S.C. § 93(g) (1976)).

4. Frigitemp's petition was filed in March 1978, prior to the adoption of the Bankruptcy code of 1978, and is therefore governed by the Bankruptcy Act.

5. Ch. 541, 30 Stat. 544, 565 (1898) (as amended and codified at 11 U.S.C. § 108(b) (1976)).

6. *Allegaert v. Perot,* 466 F.Supp. 516, 518–19 (S.D.N.Y.1978).

7. *Zavelo v. J.S. Reeves,* 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676 (1913); *Workman v. Harrison,* 282 F.2d 693 (8th Cir.1960); *Wheeling Structural Steel Co. v. Moss,* 62 F.2d 37, 40 (4th Cir. 1932).

8. *In re Lyon,* 114 F. 326 (D.C.N.Y.1902).

Racketeer Influenced and Corrupt Organizations Act (RICO), common law fraud, inducement to breach fiduciary duty, and breach of contract. For these claims to withstand the Trustee's motion, they must be provable as defined by § 63(a) of the Act. Section 63(a)(4) provides that a debt is provable in bankruptcy if it is founded upon "a contract express or implied." GD contends that all of its claims should be considered provable because they stem from an alleged breach of contract. Contrariwise, the Trustee maintains that the civil RICO and fraud claims clearly sound in tort and therefore must be dismissed.

■ In determining the provability of a claim under § 63(a)(4), the Court analyzes the specific facts of the case to determine whether the claim sounds in tort or contract.[9] Although the language of § 63(a)(4) is interpreted broadly, to cover claims of a quasi-contractual nature,[10] a claim sounding strictly in tort is not provable under that subsection.

Underpinning GD's RICO claims are the factual allegations that Davis paid bribes and kickbacks to Veliotis and Gilliland to insure that Frigitemp would be awarded subcontracts from GD. This scheme is alleged to have involved the intentional creation of sham corporations, submission of phony invoices, payment of funds into foreign bank accounts, formation of IDT, and submission of illegal, fraudulent and excessive charges to GD. Because of this activity, GD claims it was injured in its business dealings with others.

■ However viewed, these RICO claims cannot fairly be characterized as quasi-contractual. The claims allege a widespread kickback and bribery scheme, and are based in contract only to the extent that Frigitemp used phony invoices in furtherance of its allegedly fraudulent scheme. Rather, the claim clearly alleges a tort by

stating as its primary allegation that GD has been injured in its dealings with *others*. As such, the claim sounds in tort, is non-provable, and cannot be asserted in this proceeding. The same holds true for GD's common law fraud claim, which alleges an intentional failure to disclose the existence of the kickback scheme, as well as the claim that Frigitemp intentionally induced Veliotis and Gilliland to breach their fiduciary duty to GD.

■ GD's remaining claims, seeking the overcharges it paid out and asserting a breach of contract claim, clearly sound in contract and are provable. However, the Trustee contends that the claims are barred by the automatic stay imposed by the Bankruptcy Court, and cannot be asserted in any event because GD failed to file a proof of claim in Bankruptcy Court.

■ Although the automatic stay would bar the assertion of these claims in a plenary action initiated by GD, a different result obtains where the claim is asserted as a set-off or counterclaim by a defendant. As our Court of Appeals noted in *Matter of Bohack Corp.*,[11] "where a debtor institutes a lawsuit and then invokes the protection of [the automatic stay] on a counterclaim, the situation warrants careful scrutiny." Just as a court has the discretion to deny a creditor's request to lift a stay where it would be inequitable to allow the creditor's claim to proceed, so too a court has the discretion to grant a set-off "when a debtor moves outside the confines of the bankruptcy court in an attempt to reap the benefits but circumvent the burdens in another forum."[12] In *Bohack*, the Court of Appeals reversed the district court's injunction of a creditor's counterclaim in an antitrust proceeding brought by the debtor. The court noted that the debtor brought the costly proceeding, and that it was unfair for it to argue that it could not afford

---

9. *Allegaert v. Perot*, 466 F.Supp. at 519; *Duban v. Pro Tech Programs, Inc.*, 441 F.Supp. 467 (S.D.N.Y.1977); *Crimmins v. Crimmins*, 406 F.Supp. 282 (S.D.N.Y.1975).

10. *Copeland v. Emory Investors*, 436 F.Supp. 510, 514–517 (D.Del.1977), *aff'd without opinion*, 586 F.2d 834 (3d Cir.1978).

11. 599 F.2d 1160, 1168 (2d Cir.1979).

12. *Id.; accord Binnick v. Avco Financial Services of Nebraska, Inc.*, 435 F.Supp. 359 (D.Neb.1977).

to defend the counterclaim after having done so. To deny GD the assertion of properly pleaded counterclaims would allow the Trustee to use the stay as a sword instead of a shield.

■ The Trustee further argues that the stay may not be lifted without an order from the Bankruptcy Court. However, this is a proceeding in district court, which has the power to determine whether an automatic stay applies to a claim before it.[13] The Court also has the authority and duty under its equity jurisdiction to lift such a stay when justice so requires.

■ Finally, the Court rejects the Trustee's argument that GD is precluded from asserting its provable claims in this action because it did not file a proof of claim in the Bankruptcy Court. Counterclaims and set-offs may be asserted in a plenary suit notwithstanding the fact that no proof of claim had been filed in Bankruptcy Court.[14] A creditor may be content not to file such a claim as long as no affirmative relief is sought from it by the bankrupt, but once the Trustee asserts a claim against the creditor, equity requires that the creditor be permitted to assert authorized counterclaims.

In conclusion, the Trustee's motion to dismiss the counterclaims of Davis and IDT is granted, as is the motion to dismiss the counterclaims of GD alleging fraud, inducement to breach fiduciary duty, and civil RICO violations. The motion to dismiss the counterclaims seeking equitable relief and alleging breach of contract is denied.

So ordered.

---

**13.** *In re Baldwin-United Corp.,* 765 F.2d 343, 347 (2d Cir.1985).

**14.** *Zorwitz v. Okin,* 121 F.Supp. 56, 57 (E.D.N.Y. 1954).